2020 IL App (1st) 191790
No. 1-19-1790
Opinion filed December 21, 2020

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MULTIMEDIA SALES & MARKETING, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 12 CH 24766 |
| MARISOL MARZULLO, as Administrator for the Estate | ) | |
| of William Marzullo, Deceased; RADIO ADVERTISING, | ) | Honorable |
| INC.; THOMAS GENOVESE; and TOM O'CONNOR, | ) | Pamela McLean Myerson, |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Walker and Justice Coghlan concurred in the judgment, and opinion.

**OPINION**

¶ 1    Multimedia Sales & Marketing, Inc. (MSM), sued Radio Advertising, Inc. (RAI), and former MSM employees alleging, in part, that defendants misappropriated trade secrets relating to the sale of radio advertising time. Specifically, MSM alleged that when three of its employees left MSM to work for RAI, they improperly took MSM's potential customer lead lists (or renewal lead lists) that were protected by the Illinois Trade Secrets Act (Act) (765 ILCS 1065/1 *et seq.* (West 2018)) and used the information to solicit MSM customers.

¶ 2 The trial court granted summary judgment to defendants on the trade secret claims, finding that they presented evidence that many parties shared MSM's renewal lead lists and MSM failed to raise a genuine issue of material fact that the lists qualified as a trade secret under the Act. After the parties voluntary dismissed the remaining claims and counterclaims, defendants filed a motion for attorney's fees under section 5 of the Act. *Id.* § 5. The trial court granted the motion, finding that MSM's trade secrets claims were made in bad faith, and awarded $71,688 in attorney's fees.

¶ 3 MSM contends the trial court erred by (i) granting summary judgment on its trade secrets claims and (ii) awarding defendants their attorney's fees. While the appeal was pending, defendants filed a motion for attorney's fees incurred in defending this appeal, which we agreed to take with the case.

¶ 4 The trial court did not err in finding that MSM failed to raise a genuine issue of material fact that its renewal lead lists were trade secrets protected by the Act because MSM provided the names of its customers to radio stations and other parties. Further, the trial court did not abuse its discretion in finding that MSM's trade secrets claims were made in bad faith and awarding attorney's fees to defendants. As to attorney's fees for defending this appeal, we deny defendants' motion.

¶ 5 Background

¶ 6 MSM and RAI compete in the radio advertising business. Specifically, the companies contract with radio stations to purchase and sell airtime to businesses that want to air public service announcements (PSAs). To acquire new customers, MSM purchases sales leads from third-party sellers. If a sale is made, the customer becomes a renewal customer, and MSM generates a "renewal lead," which contains the customer's name and address. MSM claims it maintains sales leads and renewal leads in a secure computer database. A sales manager prints out paper copies of

sales leads and distributes them to salespeople. At the end of a particular sales run, the manager collects the sales leads and destroys them.

¶ 7    MSM's owner and president, Thomas Hughes, and its director, Jeffrey Terchin, asserted in depositions that MSM's sales leads list, renewal leads, and data about radio stations constitute confidential information. But they acknowledged that when MSM purchases a sales lead list, MSM sends it to radio stations for approval because stations have restricted customers that do not want MSM contacting them. After a sale, RAI sends the customer information to the radio station. And MSM employees signed confidentiality and nondisclosure agreements, but MSM does not have confidentiality agreements with its customers or the radio stations.

¶ 8    Defendants William Marzullo, Thomas Genovese, and Tom O'Connor were MSM sales representatives. (Marzullo died while this case was pending and Marisol Marzullo, as administrator of his estate, was substituted.) MSM alleges the three former employees left to work for RAI and improperly took MSM's sales leads lists and renewal leads lists and used them to solicit MSM customers and encourage them to move their business to RAI. The defendants do not deny that they took the information when they went to work for RAI and used it to solicit MSM customers. Indeed, in his deposition, Marzullo said that 70% to 75% of his sales at RAI (or about $500,00 in sales) came from former MSM customers. But the defendants contend that the Act does not protect the information.

¶ 9    MSM filed its initial complaint against RAI in July 2012. MSM amended its complaint numerous times, and its fifth amended complaint, filed in March 2017, alleged 26 counts against RAI, and its former employees Marzullo, Genovese, and O'Connor. Of relevance here, counts V through VIII alleged that Marzullo, Genovese, O'Connor, and RAI violated the Act by misappropriating information about its customers and potential customers and disclosing it to RAI,

a direct competitor. MSM asked for damages and sought punitive and exemplary damages at twice the value of actual damages under section 4 of the Act. *Id.* § 4.

¶ 10　MSM and defendants both moved for summary judgment. The trial court granted defendants' motion on multiple counts, including those alleging trade secret violations. As to the trade secret counts, the trial court stated "[d]efendants presented evidence that the information in question was widely shared with various parties, and, therefore, the burden was on plaintiff to raise a genuine issue of material fact as to those issues. And my holding is that it has not done so." The parties then agreed to voluntarily dismiss all remaining counts.

¶ 11　Defendants moved for attorney's fees under section 5 of the Act, which permits the court to award reasonable attorney's fees to the prevailing party when a "claim of misappropriation is made in bad faith." Id. § 5. The trial court granted the motion, finding that "[t]he depositions of plaintiff's witnesses show that there were no actual customer lead lists, and behind the question of semantics of whether or not a collection of leads could constitute a list, the information on those individual renewal lead sheets were not kept confidential, and the fact was established by testimony of plaintiffs on witnesses \*\*\*. My holding is that the facts do not fit the requirements of a claim under the trade secrets act and those facts were known at the time the claims were first made therefore my finding is that the trade secrets claims were made in bad faith and in my discretion I am awarding the defense attorney's fees associated with those claims." After a hearing, defendants were awarded $71,688 in attorney's fees.

¶ 12　MSM then filed a petition for leave to appeal the order granting summary judgment on its claims under the Act and the order awarding attorney's fees. Defendants also filed a motion for attorney's fees they paid in defending this appeal. We agreed to take that motion with the case.

¶ 13　　　　　　　　　　　　　　　　　Analysis

¶ 14                                    Standard of Review

¶ 15    Summary judgment applies where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). The court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in the opponent's favor. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* Summary judgment should be granted where the right of the movant is clear and free from doubt. *Id.* We review the trial court's grant of summary judgment *de novo*. *Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14.

¶ 16                                  Illinois Trade Secrets Act

¶ 17    The Act allows recovery of damages for the misappropriation of trade secrets. 765 ILCS 1065/4 (West 2018). "To set forth a cause of action for violation of the Act, a plaintiff must allege facts that the information at issue was: (1) a trade secret; (2) misappropriated; and (3) used in the defendant's business." *Strata Marketing, Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1068 (2000). A "trade secret" comprises information, including a program, process, or list of actual or potential customers (i) sufficiently secret to derive economic value from not being generally known to other persons who can obtain economic value from its disclosure (ii) for which reasonable efforts are taken to maintain secrecy or confidentiality. 765 ILCS 1065/2 (West 2018). Whether the information constitutes a trade secret "focuses fundamentally" on its secrecy. (Internal quotation marks omitted.) *System Development Services, Inc. v. Haarmann*, 389 Ill. App. 3d 561, 572 (2009). Thus, to show that information falls within the Act's purview, the plaintiff must show that the

information was sufficiently secret to give plaintiff a competitive advantage and plaintiff took affirmative measures to prevent others from acquiring or using the information. *Stenstrom Petroleum Services Group, Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1090 (2007).

¶ 18                              Whether MSM Customer Lists Are Covered Under the Act

¶ 19    As a preliminary matter, defendants contend MSM failed to maintain customers lists or identify what information it was trying to protect. Defendants point to the trial court's statement at the hearing on the motion for attorney's fees, "[t]he depositions of plaintiff's witnesses show that there were no actual customer lead lists." Thus, defendants argue that MSM's failure to identify specific customer information, in the form of a customer list or otherwise, that it was seeking to protect precludes it from claiming a trade secret violation.

¶ 20    We disagree. MSM's renewal lead lists are eligible for protection under the Act. They contained information regarding the customer's name, telephone number, purchase history, PSAs purchased, and pricing. Both the Act and case law recognize that "customer lists" can constitute trade secrets as long as maintained in confidence. See 765 ILCS 1065/2(d) (West 2018) (including "list of actual or potential customers" within the definition of trade secret); *Allied Waste Services of North America, LLC v. Tibble*, 177 F. Supp. 3d 1103, 1112 (N.D. Ill. 2016) ("customer lists that are not readily ascertainable" can constitute trade secrets (internal quotation marks omitted)). The compilation here functions the same as the lists in *Gillis Associated Industries, Inc. v. Cari-All, Inc.*, 206 Ill. App. 3d 184, 190-91 (1990), where the compilation contained the "names and telephone numbers of customers who conduct business across the nation and who have been sold on their respective need for wire shelving."

¶ 21                              Information Was Not Kept Secret

¶ 22    Nonetheless, MSM's misappropriation claim fails because it did not show it kept the information on the renewal lead list sufficiently secret or made reasonable efforts to maintain their secrecy. See 765 ILCS 1065/2(d) (West 2018).

¶ 23    MSM acknowledges providing customer names to radio stations. Indeed, in its brief, MSM states that "Radio stations are aware of the MSM customers that purchase PSA advertisements, they have to be." Citing *SKF USA, Inc. v. Bjerkness*, 636 F. Supp. 2d 696 (N.D. Ill. 2009). MSM argues, however, that the fact that radio stations and customers are aware of each other does not mean that the information on the renewal lists did not deserve protection as a trade secret. In *SKF*, the trial court stated "[t]he fact that a company shares information with a customer does not mean the vendor does not attach importance to that information; rather, it reflects a reality of the business environment that some confidential information must sometimes be shared with the client who pays for it without making the necessary effort to arrange a non-disclosure agreement." *Id.* at 713. Thus, MSM contends, the Act protects the information, even where the radio stations know a customer's name.

¶ 24    *SKF* is distinguishable, however, because the decision turned on protecting the employer's confidential information from disclosure by a restrictive covenant in an employment agreement, not under the Act. Indeed, the trial judge expressly stated that because the plaintiff had a reasonable likelihood of success on its breach of contract claim, she would not be addressing the plaintiff's trade secrets claims. *Id.* at 715 ("there is no need at this time to conduct an independent analysis of the trade secrets claim"). Further, the court stated that while there may be substantial overlap between confidential information and trade secrets, "an enforceable restrictive covenant may protect material not properly characterized as a trade secret" and affords broader protection than trade secret law. (Internal quotation marks omitted.) *Id.* at 711. The court concluded that even

though some of the information the employer sought to protect had been disclosed to customers, under the employment agreements, it was confidential information. *Id.* at 713.

¶ 25    Unlike MSM, the plaintiff in *SKF* properly used enforceable covenants not to compete to protect its confidences.

¶ 26    MSM also argues that although it gave the name of its customers to radio stations, it did not disclose other important information, like the customer's contact person, purchase history, or PSA preferences. That is irrelevant, however, because once a competitor hears a PSA from one of MSM's customers or otherwise receives the name of an MSM customer from the radio station, it can contact the customer and acquire whatever information the customer is willing to provide. In short, once the customer's name is known, the other "important information" MSM says is secret is easily ascertainable and so not secret information under the Act.

¶ 27    MSM provided the names of its customers to radio stations, which then broadcast that information and were otherwise free to use it without restrictions. Thus, because MSM failed to raise a genuine issue of material fact that it kept its customer information secret, the trial court did not err in granting summary judgment to defendants on MSM's trade secrets claims.

¶ 28                           Attorney's Fees

¶ 29    The Act provides, in part, that if "a claim of misappropriation is made in bad faith *** the court may award reasonable attorney's fees to the prevailing party." 765 ILCS 1065/5 (West 2018). Where a statute provides that a court "may" award attorney's fees, the award lies within the discretion of the trial court and will be overturned only on a showing of an abuse of discretion. *Armour Swift-Eckrich v. Industrial Comm'n*, 355 Ill. App. 3d 708, 711-12 (2005). An abuse of discretion may be found when there is an error of law. *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 18.

¶ 30    In *Conxall Corp. v. iCONN Systems, LLC*, 2016 IL App (1st) 140158, ¶ 32, the appellate court held that when deciding whether to award attorney's fees under the Act, the trial court may "be guided"—but not "constrained"—"by the body of case law construing [Illinois Supreme Court] Rule 137." (Internal quotation marks omitted.) Illinois Supreme Court Rule 137(a) (eff. Jan. 1, 2018) states in relevant part, "The signature of an attorney or party constitutes a certificate by him that *** it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." "[T]he purpose of Rule 137 is to penalize claimants who bring vexatious and harassing actions and to prevent false and frivolous filings." *Conxall Corp.*, 2016 IL App (1st) 140158, ¶ 98 (Rochford, P.J., specially concurring) (citing *Krautsack v. Anderson*, 223 Ill. 2d 541, 561-62 (2006)).

¶ 31    MSM contends that in assessing whether it acted in bad faith, the trial court myopically focused on whether MSM's renewal lists were customer lists under the Act. While the trial court did question whether MSM maintained customer lists, it further stated that "beyond the question of semantics of whether or not a question of leads could constitute a list, the information on those individual renewal lead sheets was not kept confidential and that fact was established by the testimony of plaintiff's own witnesses. So, while the plaintiff may have had a genuine belief that the defendants were wrong to use the information from plaintiff in their new businesses, my holding is that the facts do not fit the requirements of a claim under the Trade Secrets Act and those facts were known at the time the claims were first made." Applying the standard set forth in Rule 137, the court found that MSM's trade secrets claims were "never well-grounded in fact or warranted by existing law or an argument to extend existing law" and awarded attorney's fees.

¶ 32 MSM admitted to providing material information about its customers to radio stations without requiring the stations to sign confidentiality agreements and knowing that the radio stations would air the customers' information or otherwise disclose it. So, the trial court did not abuse its discretion in finding that MSM's trade secret claims were not well-grounded in fact or law, but made in bad faith under the Act.

¶ 33 In their brief and in a separate motion, defendants have asked for attorney's fees they incurred in defending the appeal. For support, defendants cite *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 27, where the appellate court awarded the appellee attorney's fees incurred in defense of an appeal based on a lease provision allowing a prevailing party to recover reasonable attorney's fees and court costs. Defendants do not rely on a contract provision but instead request fees under section 5 of the Act. As noted, section 5 permits the prevailing party to recover reasonable attorney's fees when a claim of misappropriation is made in bad faith (765 ILCS 1065/5 (West 2018)), and, as we have found, the trial court properly awarded defendants attorney's fees.

¶ 34 Moreover, section 5 does not specifically provide for payment of attorney's fees incurred on appeal, and defendants have provided no other basis for an attorney's fees award. See *Dallas v. Ameren CIPS*, 402 Ill. App. 3d 307 (2010) (workers' compensation claimant was not entitled to attorney's fees and costs incurred on appeal where Workers' Compensation Act did not specifically provide for payment of attorney's fees for appeal). Moreover, even if section 5 extends to an appeal, MSM had a right to appeal the trial court's summary judgment order as long as it had a good faith belief the trial court committed error. See Ill. S. Ct. Rs. 301, 375(b) (eff. Feb. 1, 1994). Defendants have neither argued nor shown that MSM violated Rule 375(b). The motion for attorney's fees incurred on appeal is denied.

¶ 35 Affirmed.

1-19-1790

**No. 1-19-1790**

| | |
|---|---|
| **Cite as:** | *Multimedia Sales & Marketing, Inc. v. Marzullo*, 2020 IL App (1st) 191790 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 12-CH-24766; the Hon. Pamela McLean Myerson, Judge, presiding. |
| **Attorneys for Appellant:** | Scott Berends, of Busse, Busse & Grasse PC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Scott A. Kogen, of Law Offices of Scott A. Kogen and Associates, P.C., of Chicago, for appellees. |