2023 IL App (2d) 230083-U
No. 2-23-0083
Order filed December 19, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SAVIS, INC., TRIPLE TAKE LAWN CARE, INC., and STATE JEWELERS & LOAN, INC., | ) ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiffs-Appellants and Cross-Appellees, | ) ) | |
| v. | ) | No. 17-CH-683 |
| | ) | |
| ANTOINE KHOURY, JOHN KHOURY, AMANDA KHOURY, ANSHUL MANGAL, PROJECT FARMA, LLC, PROJECT FARMA, INC., ELEVATED SPECIALTY SERVICES, LLC, BIZBOT, LLC, AVEXIS, INC., SCOTT BERTCH, GREG GARA, SARAH STOLL, ZACHARY LUCE, KYLE WU, NICHOLAS WEINREICH, KATHERINE THOMAS, RYAN LIMBO, CORY PROCTOR, NATHAN TRAUGHBER, WEINREICH INDUSTRIES, LLC, and CORY PROCTOR, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Antoine Khoury, John Khoury, Project Farma, LLC, and Project Farma, Inc., Defendants-Appellees and Cross-Appellants). | ) ) ) | Honorable Daniel L. Jasica, Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm in all respects the trial court's judgment regarding issues arising from its entry of judgment in favor of defendants and against plaintiffs following a bench trial and its disposition of defendants' motion for attorney fees and costs.

¶ 2    Plaintiffs, Savis, Inc. (Savis), Triple Take Lawn Care, Inc. (Triple Take), and State Jewelers & Loan, Inc. (State Jewelers) (collectively plaintiffs), appeal the trial court's orders denying Savis's motions for leave to file a second amended complaint and to amend the first amended complaint to conform to the proofs. Plaintiffs further argue that the trial court: (1) failed to properly find that defendants and counter-appellants Antoine Khoury (Tony), John Khoury (John), Project Farma, LLC, and Project Farma, Inc.[1] (collectively defendants) owed Savis a fiduciary duty; (2) failed to appreciate that Savis proved damages stemming from defendants' allegedly tortious conduct; and (3) abused its discretion in prohibiting Savis from introducing certain relevant evidence at trial.

¶ 3    In their cross-appeal, defendants argue that the trial court erred in: (1) refusing to "award defendants attorney's fees pursuant to the Illinois Trade Secrets Act (Act) [(765 ILCS 1065/1 *et seq.* (West 2018))];" and (2) in awarding defendants "only a portion of their costs." We affirm.

¶ 4                          I. BACKGROUND

¶ 5    We summarize the relevant facts. Savis is an "engineering consulting firm" whose clients include "pharmaceutical and biomedical companies seeking to obtain Federal Drug Administration

---

[1]According to portions of the record, it does not appear as if Project Farma, Inc. currently exists. Because the parties seemingly refer to Project Farma, LLC, and Project Farma, Inc. interchangeably, for the sake of clarity, we refer to both entities simply as "Project Farma."

*** approvals." Joseph Daou is an owner and president of Savis. Daou also owned Triple Take, a "lawn care services business," as well as State Jewelers, a pawn and jewelry shop.

¶ 6     On May 11, 2017, plaintiffs filed their 12-count complaint for injunctive and other relief against 20 different defendants. On May 3, 2018, plaintiffs amended their complaint, which now contained the following ten counts against a total of 21 defendants: (1) Savis's claim of tortious interference with businesses relationships and expectancies against Tony, John, Amanda Khoury[2] (Amanda), Anshul Mangal, and Project Farma (count I); (2) Savis's claim of breach of fiduciary duty claim against John and Tony (collectively the Khoury brothers) (count II); (3) Savis's claim of a violation of the Act against the Khoury brothers, Mangal, and Project Farma (count III); (4) Savis's claim of conversion against the Khoury brothers, Amanda, Elevated Specialty Services, LLC (Elevated), and Bizbot, LLC (Bizbot) (count IV); (5) Savis's claim of breach of noncompetition agreement against Sarah Stoll, Zachary Luce, Kyle Wu, Nicholas Weinreich, Katherine Thomas, Ryan Limbo, Cory Proctor, Nathan Traughber, Weinreich Industries, LLC, and Cory Proctor, LLC (count V); (6) Savis's breach of contract claim against AveXis (count VI); (7) Savis's claim of tortious interference with contracts, business relationships, and expectancies claim against AveXis (count VII); (8) Triple Take's conversion claim against John and Amanda (count VIII); (9) State Jeweler's conversion claim against John and Amanda (count IX); and (10) Savis's, Triple Take's, and State Jewelers' civil conspiracy claim against the Khoury brothers, Amanda, Scott Bertch, and Greg Gara (count X).[3]

_____

[2]Amanda is John Khoury's wife.

[3]Amanda, Mangal, Elevated, Bizbot, AveXis, Bertch, Gara, Stoll, Luce, Wu, Weinreich, Thomas, Limbo, Proctor, Traughber, Wenrich Industries, LLC, and Cory Proctor, LLC, are not

¶ 7      In the complaint, plaintiffs alleged that the Khoury brothers were "engineers who worked for Savis, both holding trusted senior leadership positions as [m]anaging [d]irectors." According to plaintiffs, John also spearheaded Savis's information technologies department, giving him "full access to all of Savis'[s] confidential and proprietary information." John's position also purportedly required him to hire additional engineers, complete sales, execute agreements, manage projects, and communicate with clients.

¶ 8      Tony, according to the complaint, helped develop "confidential proposals" and drafted feasibility studies." Additionally, he helped with engineering tasks, procured and supplied equipment, worked on installations, completed project management services, and also hired other engineers. Like John, Tony had "full access to Savis'[s] confidential and proprietary information," including Savis's client lists.

¶ 9      Plaintiffs alleged that, in February 2016, "Savis entered into a consulting agreement with pharmaceutical company AveXis, Inc.,[4] under which Savis would provide engineering services." At this time, both Khoury brothers worked extensively with AveXis, and, along with Amanda, they "form[ed] close personal relationships with key [AveXis] employees[ ] Greg Gara (Director of Technical Operations) and Scott Bertch (Director of Validation)."

¶ 10     Plaintiffs alleged that the Khoury brothers attempted to utilize their close relationship with AveXis as a bargaining chip in a bid to gain an ownership interest in Daou's three businesses. However, Daou rejected the Khourys' requests for an increased stake in his companies, leading

_____

parties to the instant appeal.

[4]In other portions of the record, this company is sometimes styled as "Avexis." For the sake of uniformity, we will refer to the business simply as "AveXis."

the Khoury brothers to conspire "to sabotage Savis' work at AveXis." Specifically, plaintiffs alleged that the Khoury's plotted to take AveXis's and other clients' business "to a competing enterprise [subsequently] formed by John Khoury, Amanda Khoury, Tony Khoury[,] and/or Anshul Mangal," who was a longtime friend of the Khoury brothers. As part of their purported plot, the Khourys allegedly "converted Savis funds" "to further enhance their relationships with key AveXis employees[]and other Savis clients." John "abruptly resigned" from Savis "on or about August 5, 2016," after having "verbally threatened to devastate and sabotage the Savis business and other businesses owned by *** Daou." After having left Savis, John purportedly "retained a laptop computer on which, upon information and belief, he had downloaded Savis'[s] confidential proprietary information and trade secrets," including Savis's library of standard operating procedures (SOPs).

¶ 11    Meanwhile, Tony "remained working at Savis in order to collect a bonus," although he "continued to collaborate and conspire with his brother, Scott Bertch[,] and Greg Gara to take control of the AveXis business and recruit Savis engineers to join the competing enterprise." In October 2016, after having received his bonus, Tony resigned from Savis. Even after their resignations, however, both Khoury brothers allegedly "misappropriated confidential information, including trade secrets of incalculable value from plaintiffs," which they had "wrongfully downloaded."

¶ 12    On November 15, 2016, AveXis notified Savis that it would be "terminating its consulting agreement with Savis." Savis became privy to certain emails suggesting that AveXis had transferred its business to Project Farma, a company that the Khoury brothers and Mangal formed, allegedly with "improperly converted [Savis] funds." According to plaintiffs, the Khoury brothers also solicited other Savis engineers to join Project Farma. As such, plaintiffs identified numerous

engineers, including Proctor and Thomas, who had recently begun working for the company despite having purportedly signed noncompetition agreements with Savis. As a result of the Khoury brothers' actions, plaintiffs alleged that Savis faced unspecified "significant revenue loss and business disruption" across its entire customer base.

¶ 13    From June 29, 2018, to August 1, 2018, defendants filed a series of motions collectively moving to dismiss all of the counts encompassing the amended complaint. On January 23, 2019, the court held a hearing as to all of the defendants' pending motions to dismiss. By the conclusion of the hearing, the court dismissed without prejudice: (1) count I as to defendants Amanda and Mangal only; (2) count II; (3) count III as to Mangal only; (4) count IV; (5)count VI; (6) count VII; and (7) count X as to Amanda, Bertch, and Gara.

¶ 14    Eventually, the case proceeded to discovery. On May 17, 2019, Project Farma, Tony, John, Elevated, and Bizbot served their first set of document production requests to plaintiffs. Pertinently, these defendants requested that plaintiffs provide them with any documents that "contain information that [p]laintiffs consider to be either 'proprietary,' 'confidential,' or a 'trade secret' " for purposes of count III of the amended complaint.

¶ 15    On October 10, 2019, John and Amanda filed a motion to dismiss count VIII of plaintiff's amended complaint. On December 19, 2019, the court granted John and Amanda's motion to dismiss count VIII of the amended complaint only as to Amanda.

¶ 16    On January 17, 2020, plaintiffs filed their motion to compel defendants' document production. According to the motion, the parties had all agreed to simultaneously exchange their document productions. However, when plaintiffs reached out to defendants to swap documents, defendants informed plaintiffs that they "would not produce [defendants'] documentation at that time as [defendants were] concerned as to the format of [p]laintiffs' expected production."

Nonetheless, on January 3, 2020, "[p]laintiffs produced their discovery documentation on a flash drive" before demanding defendants to do the same. However, defendants had not acquiesced to plaintiffs' request.

¶ 17     On January 27, 2020, defendants filed their motion to compel plaintiffs to produce certain discovery. In their memorandum accompanying the motion, defendants described how, in spite of their request for a production of documents, plaintiffs "have failed to produce a single Bates-stamped document in the format requested by [d]efendants, despite never objecting to [d]efendants' [r]equests. Instead, [p]laintiffs' first document production consisted of giving *** [d]efendants a flash drive containing over 28,000 non-Bates stamped files, kept in over 10,000 folders, comprising approximately 106 gigabytes." According to defendants, they "received an electronic document dump that not even [p]laintiffs' counsel could explain." Given these various "failings," defendants argued that they should not be required to serve their own discovery responses "until plaintiffs have provided a compliant document production."

¶ 18     On March 4, 2020, the parties appeared for hearing on their dueling motions to compel. The court offered to give the parties some time to see whether they could come to an agreement as to the production of documents. After conferring with one another, the parties proposed that they continue their motions, and that plaintiffs would "rearrange" their discovery materials by April 18, 2020. On April 22, 2020, plaintiffs tendered to defendants their discovery documents. From April 22, 2020, through May 1, 2020, defendants served their discovery productions to plaintiffs on "a rolling basis."

¶ 19     On June 10, 2020, defendants filed their second motion to compel, essentially arguing that plaintiffs needed to convert their discovery productions to a more accessible file format. On June 11, 2020, plaintiffs filed their second motion to compel, arguing that the defendants' latest

discovery productions "did not resolve or attempt to address many issues [previously] raised by [p]laintiffs' counsel" in their prior motion to compel.

¶ 20    On June 30, 2020, the court entered an order granting in part defendants' second motion to compel, ordering plaintiffs to "produce their discovery document production in a native, uncorrupted format as maintained by [p]laintiffs in the ordinary course of business." Furthermore, plaintiffs' second motion to compel was also granted in part, with the trial court ordering defendants to produce certain documents to plaintiffs by August 20, 2020. On August 13, 2020, the court entered a subsequent order, requiring plaintiffs to produce their discovery production to defendants by September 3, 2020.

¶ 21    On October 22, 2020, the trial court entered a case management order directing that discovery was to be completed by April 30, 2021. On February 16, 2021, however, defendants filed a third motion to compel—this time seeking an order compelling plaintiffs to respond to certain interrogatories concerning the trade secrets underlying count III of the amended complaint. On February 19, 2021, plaintiffs filed their third motion to compel. In this latest motion, plaintiffs sought a court order compelling defendants to produce Tony, John, Proctor, Thomas, Luce, and Weinreich for depositions. On February 23, 2021, defendants filed their fourth motion to compel, seeking certain responses to additional interrogatories and document requests.

¶ 22    On February 26, 2021, certain of defendants moved for summary judgment as to count V of plaintiffs' first amended complaint, essentially arguing that the noncompete-agreement underlying the count was unenforceable as a matter of law.

¶ 23    On April 14, 2021, the court entered an order requiring plaintiffs to identify, by Bates number, "all [SOPs], customer templates, and employee training templates that are the subject of [p]laintiffs' [c]ount I tortious interference claims and [c]ount III trade secret misappropriation

claim *** that [p]laintiffs intend[ed] to assert against [d]efendants at trial." The court also ordered plaintiffs to respond by May 6, 2021, to outstanding discovery requests.

¶ 24    On May 11, 2021, plaintiffs filed a motion for extension of time, seeking to extend the May 6, 2021, deadline that the court imposed in its April 14, 2021, order. By May 26, 2021, plaintiffs identified and disclosed a total of 146 documents, comprised of SOPs, templates, and training documents, in response to the court's April 14, 2021, order. On May 28, 2021, the court entered a case management order closing discovery on December 31, 2021. The parties continued to engage in discovery.

¶ 25    On June 15, 2021, Tony, John, and Project Farma moved for summary judgment as to count III, arguing that Savis failed to identify any trade secrets, thus omitting an essential element of their claim under the Act. Also on June 15, 2021, these same defendants moved for summary judgment as to count I of the first amended complaint, arguing that plaintiffs had not pleaded any damages resulting from their tortious interference claim. Also on that date, John filed a motion for summary judgment as to counts VIII and IX of the first amended complaint. In the motion, John argued that plaintiffs were unable to "demonstrate that they made a demand of the allegedly converted funds" at issue in its conversion claims, and that plaintiffs had failed to otherwise plead a conversion claim. On June 22, 2021, plaintiffs moved to strike defendants' pending motions for summary judgment, arguing that the motions were premature. On June 23, 2021, the trial court entered an order denying plaintiffs' request to strike defendants' motions for summary judgment.

¶ 26    On August 23, 2021, plaintiffs filed another motion to compel, this time seeking a court order requiring defendants to complete answers and responses to certain of plaintiffs' supplementary discovery requests. On September 22, 2021, defendants filed yet another motion to compel, seeking an order compelling plaintiffs to produce pertinent financial data in response to

defendants' prior discovery requests. On November 1, 2021, the court resolved these motions to compel, ordering the parties to exchange certain documents to one another within 14 days.

¶ 27     On December 2, 2021, the court amended its prior case management order, specifying that discovery would now close on January 31, 2022. On February 10, 2022, however, pursuant to plaintiffs' request, the court entered an order allowing plaintiffs to conduct certain additional written discovery and depositions until March 15, 2022.

¶ 28     On February 14, 2022, plaintiffs moved for leave to file a second amended complaint. According to their motion, plaintiffs had recently learned "several key facts" during discovery, which necessitated further amendment of their complaint. As example, plaintiffs described how they had recently learned that defendants Proctor, Thomas, Traughber, Bertch, Gara, and AveXis "played a more central role" in the conspiracy against Savis than previously realized. As a result of these revelations, plaintiffs argued it was necessary to make the following amendments to their first amended complaint: to (1) separate its tortious interference claims into five separate counts to implicate several additional defendants; (2) reassert its breach of fiduciary duty claims against the Khoury brothers using "multiple additional facts to establish their fiduciary relationship and breach of the same;" (3) add Proctor as a defendant to its trade secrets claim and an additional claim for breach of confidentiality agreement; (4) reassert its breach of contract and tortious interference claims against AveXis, while adding defendants Bertch and Gara to the latter; (5) assert "a new claim against AveXis for breach of the limited license provision in the Savis-AveXis consulting agreement;" (6) add Proctor, Thomas, and Traughber in its civil conspiracy count, which would also be realleged against defendants AveXis, Bertch, Gara, and Mangal; (7) add Mangal to its tortious interference, trade secrets, and conspiracy claims; and (8) add Elevated and Bizbot to any counts already involving John and Tony. In all, plaintiffs' proposed

second amended complaint would include 15 separate counts, more than doubling the amount of live claims in the matter through 237 additional paragraphs of allegations. For reference, plaintiffs' first amended complaint contained only 151 paragraphs of allegations against defendants.

¶ 29    On February 18, 2022, plaintiffs filed their motion for partial summary judgment solely as to the issue of liability on count V of its amended complaint.

¶ 30    On March 4, 2022, defendants responded to plaintiffs' motion for leave to file a second amended complaint. In their response, defendants argued that they would be prejudiced if plaintiffs were allowed to file the proposed second amended complaint, as the complaint would completely upend litigation when the parties were less than two months away from trial, which was currently scheduled for May 2, 2022. Defendants also argued that the second amended complaint was untimely, as "exemplified by the new 'allegations' [p]laintiffs include[d] in their proposed amended complaint, which have been known to [p]laintiffs for at least six months." Defendants further argued that the "claims [p]laintiffs [sought] to assert and/or reassert [did] not cure the deficiencies that led to their initial dismissal, or [were] otherwise futile." As put by defendants, "[p]laintiffs plead[ed] no new facts that would otherwise elevate their previously dismissed counts to a viable claim, and [p]laintiffs' new proposed counts, on their face, contain multiple deficiencies."

¶ 31    On March 23, 2022, the court held a hearing on plaintiff's motion for leave to file a second amended complaint. After brief argument by the parties, the court considered certain, relevant factors, as set forth by our supreme court in *Loyola Academy v. S & S Roof Maintenance, Inc.,* 146 Ill. 2d 263, 273-74 (1992), before ultimately denying plaintiffs' motion. According to the court, the first such factor, whether the proposed amendments were designed to "cure [a] defective pleading," weighed against allowing any amendments, because "[t]he proposed amendment [was

not] simply [to cure] some defective pleading, [it was] adding additional [defendants], it[ was] adding eight additional counts, [and] it[ was] doubling the size of the complaint and the scope of the case." Second, in considering whether the amendment would cause defendants to suffer "prejudice and surprise," the court found that "there would be prejudice given the current close of discovery and the additional new claims so close to the trial date." Third, the court concluded that plaintiffs' proposed amendment was untimely, as the case was over four years old, discovery had already closed, the "dispositive motion cut-off has come and gone," and, months earlier, plaintiffs had admitted that they knew of certain information they were now sought to incorporate into their complaint. Last, the court found that plaintiffs had ample opportunity to amend their complaint prior to bringing their instant motion.

¶ 32 On May 24, 2022, the trial court granted summary judgment in favor of defendants and against plaintiffs as to count V. On June 1, 2022, the trial court entered an order resolving the parties' remaining, pending summary judgment motions. Pursuant to the order, defendants' motions for summary judgment as to counts I and IX were granted. However, the court denied defendants' motions as to counts III and VIII. Accordingly, only three of plaintiffs' claims were to proceed to trial: counts III, VIII, and X. Following the resolution of all of defendants' assorted motions to dismiss, these counts only implicated defendants John, Tony, and Project Farma.

¶ 33 On June 7, 2022, defendants filed a motion in *limine* to bar plaintiffs from introducing evidence of any trade secrets aside from the 146 documents previously disclosed pursuant to the court's April 14, 2021, order. In their response to defendants' motion, plaintiffs argued that one particular computer file, which it identified as its Phase 2 Facility Build File (Phase 2 Build folder), had additionally been previously disclosed to defendants, and that plaintiffs should consequently be entitled to produce evidence of the folder at trial in support of their trade secrets claim.

¶ 34 On June 13, 2022, the parties exchanged several emails with one another, in which they seemingly agreed to equally split the cost of their court reporter.

¶ 35 On June 27, 2022, the parties appeared for trial. Before opening statements, however, the parties addressed their motions *in limine.* After brief argument, the court apparently agreed that plaintiffs did previously disclose the existence of the Phase 2 Build folder, but only in relation to their prior, dismissed tortious interference claim. Consequently, the court found that plaintiffs had not disclosed the file in relation to its trade secrets claim. Nonetheless, the court denied defendants' motion without prejudice, essentially tabling the matter.

¶ 36 Following the parties' opening statements, plaintiffs presented their case, calling John, Tony, Proctor, Thomas, and more to testify. While testifying, Tony agreed that, while he still was working with Savis as an independent contractor, he was "included on e-mails with Project Farma personnel." Tony testified that his "relationship" with Savis ended in October 2016. After Tony's business, Bizbot, "was contracted by Project Farma in 2016," his work was "focused on an AveXis project." On November 17, 2016, after Tony had ended his working relationship with Savis, he exchanged text messages with Proctor, who still was working for Savis, directing him to access the Phase 2 Build folder. Tony testified that, in directing Proctor to access the folder, he was helping Proctor with one of Proctor's current assignments at Savis. However, "Phase 2 was an AveXis Project," and AveXis had already terminated its relationship with Savis on November 15, 2016. Also on November 17, 2016, Proctor emailed Tony's personal email account with an attachment purporting to be Proctor's résumé. In December 2016, Proctor texted Tony, informing him that he was in the process of "uploading some documents" to an unspecified location. Tony testified that the "documents" Proctor was referring to once again included résumé materials. Plaintiffs presented Tony with two joint email addresses that were set up between himself, Proctor,

and Thomas. Tony could not recall who had created the email addresses, but testified that they were used to share résumés, and not to surreptitiously share Savis files, despite the fact that Proctor and Tony had used their personal email addresses when sharing résumé materials in the past. During their testimonies, Proctor and Thomas would come to agree that the three shared résumés with one another through the joint email addresses. However, during his testimony, Proctor also acknowledged that he had uploaded certain work documents to one of the addresses, involving Amgen, another of Savis's former clients that eventually brought its business to Project Farma.

¶ 37    Plaintiffs called Steven Brown, a principal engineer at Savis, to testify. Brown had personally identified the 146 documents that plaintiffs disclosed pursuant to the trial court's April 14, 2021, order. According to Brown, these documents were compiled to reflect "the various types of documents that might exist in larger portions within [Savis's] drive." Brown testified that Savis's drive contained a number of SOPs and human resource documents, and he agreed that many of the documents on the drive "might also be able to be found elsewhere, such as online." According to Brown, Savis did not share these documents with competitors, but, "at times," they did share this work product with clients. Plaintiffs sought to admit the 146 documents into evidence, drawing an objection from defendants, who argued a lack of foundation. Ultimately, after further questioning, the court admitted 13 of the 146 purported trade secret documents into evidence.

¶ 38    Plaintiffs also called Tim Mussman, another one of Savis's principal engineers, to testify as to the contents of the Phase 2 Build folder. The parties quickly engaged in another argument as to whether evidence of the folder should be admitted. Ultimately, the court agreed with defendants that, because the Phase 2 Build folder was not previously disclosed as containing trade secrets, plaintiffs could make no further inquiry into the folder. Following the court's ruling, Mussman

testified generally as to his work completed for Savis and broadly discussed different types of documents located in the company's computer drive. He further testified that he was aware that John broke company protocol by archiving and sending portions of the drive to his own personal email. On cross-examination, however, Mussman admitted that he had not personally seen John or Tony "take anything" from Savis when they left the company, and that he had never examined their computer equipment "in any way" to verify whether they had stolen information from Savis.

¶ 39     Before the plaintiffs rested their case, they announced their intention to move to amend the complaint to conform to the proofs. According to plaintiffs, the facts adduced at trial supported a new breach of contract theory that should be added to the operative complaint. Furthermore, plaintiffs argued that they should be able to cite certain trial evidence in bolstering their claims of a civil conspiracy. The court advised the parties that it was not prepared to rule on such a motion, and invited plaintiffs to submit their motion in writing.

¶ 40     Plaintiffs rested their case, and defendants moved for a directed finding. After the court denied their motion, defendants rested as well. The court ordered the parties to submit their closing arguments in writing and set a briefing schedule as to plaintiffs' motion to conform. On July 29, 2022, the parties filed their closing arguments.

¶ 41     On August 5, 2022, plaintiffs filed their motion to conform. In the motion, plaintiffs argued that they should be granted leave to add four causes of action to their first amended complaint: (1) a civil conspiracy count against John, Tony, Mangal, Proctor, Thomas, and Project Farma based on their breach of fiduciary duty; (2) another civil conspiracy count against these same defendants based on tortious interference; (3) a breach of fiduciary duty claim against Tony; and (4) an unjust enrichment claim against John and Elevated. No proposed complaint was attached to plaintiffs' motion.

¶ 42    On September 1, 2022, the parties appeared for hearing on plaintiffs' latest motion to amend. In ruling on the motion, the court first stressed that both itself and defendants were prejudiced by plaintiffs' failure to attach a proposed complaint to their filing. Nonetheless, the court considered the motion, and, after analyzing the *Loyola* factors, denied the motion.

¶ 43    On September 22, 2022, the court entered its final judgment. Concerning count III, the trial court found that, since the beginning of the case, plaintiffs struggled to identify exactly which trade secrets defendants allegedly misappropriated. To this point, the court found that none of the 146 documents that plaintiffs identified in response to the court's April 14, 2021, order could qualify as trade secrets, as there was no indication that any of these documents were confidential, proprietary, or, in at least some cases, the property of Savis. Furthermore, even if the court had not barred plaintiffs from introducing evidence of the Phase 2 Build folder, the parties' consulting agreement established that the folder was AveXis's property, meaning it could not support a cause of action under the Act. For this reason, AveXis could not have misappropriated any documents contained within the folder.

¶ 44    The court next found that count VIII of the first amended complaint was brought solely on behalf of Triple Take, an entity that did not exist anymore. Accordingly, defendants were entitled to judgment as to this count because Triple Take could not "properly maintain the suit." However, even if Triple Take could maintain count VIII, the court found that plaintiffs never made any demands for any allegedly converted funds, meaning plaintiffs had not established all of the essential elements of a conversion. Furthermore, at trial, Daou had testified that he allowed John to take the allegedly converted funds from Triple Take as a loan, meaning "the money was plainly voluntarily given to John."

¶ 45     Concerning count X, the court found that plaintiffs had failed to prove "illegal or tortious conduct to support any of the underlying claims" of a civil conspiracy.

¶ 46     On October 20, 2022, defendants filed their motion for statutory costs, seeking an order awarding them $25,632.90 in costs—mainly comprised of transcription fees—against plaintiffs. Also on that day, defendants filed their motion for attorney fees pursuant to the Act. In this motion, defendants argued that Savis had failed to reasonably investigate the trade secrets claim underlying count III of the amended complaint, as demonstrated by its failure to identify any allegedly misappropriated trade secrets for years after initiating suit. Arguing that Savis's failure evinced bad faith, defendants argued that they were entitled to attorney's fees under the Act.

¶ 47     On February 8, 2023, the parties appeared for hearing on defendants' motions for costs and attorney fees. First, concerning their motion for attorney fees, the court found that there was "no basis to conclude that Savis's claims were brought against the defendants for an improper purpose or motive." While Savis did seemingly struggle to identify the allegedly misappropriated trade secrets underlying count III of their amended complaint, the court did not attribute this to malice, as there was "unquestionable" evidence that "Tony *** downloaded and directed others to download electronic files from Savis's library of electronic records at or about the time he was departing Savis." While the court "ultimately concluded that the documents downloaded were most probably [AveXis] work product that was not owned by [Savis] based on the Savis AveXis consulting agreement," the court found that it was "not entirely unreasonable for Savis to argue otherwise," as defendants could have "simply directed AveXis to form[ally] request those documents from Savis," without having had to download the files themselves. Furthermore, while defendants "attempted to make much of the fact that Savis did not conduct a forensic analysis of its electronic storage system to confirm exactly what documentation was downloaded," the court

questioned whether such an analysis was possible. Regardless, the court regarded this hypothetical shortcoming "as a failure of proof and not as evidence of bad faith." For all of these reasons, the court denied defendants' motion for attorney fees under the Act.

¶ 48    Concerning defendants' motion for costs, defendants conceded that the parties had previously agreed to split any costs from their court reporter. Still, defendants argued that, because they prevailed at trial, the agreement did not preclude the court from requiring plaintiffs to pay the full amount of these costs. Nonetheless, the court disagreed, and, pursuant to the parties' pretrial agreement, ordered plaintiffs to pay half of the reporter's costs, which totaled $12,803.95.

¶ 49    Plaintiffs timely appeal, and defendants timely cross-appeal.

¶ 50                              II. ANALYSIS

¶ 51    On appeal, the plaintiffs raise five main arguments. First, plaintiffs argue that the trial court abused its discretion in denying Savis's February 2022 motion for leave to file a second amended complaint. Second, plaintiffs argue that the trial court abused its discretion by denying Savis's posttrial motion to conform. Third, plaintiffs contend that the trial court erred when it found that, as a matter of law, defendants Tony and John could not have owed Savis any fiduciary duties. Fourth, plaintiffs argue that the court failed to appreciate that "Savis proved damages stemming from defendants' tortious conduct." Fifth, plaintiffs contend that the trial court erred in prohibiting Savis from "introducing evidence that its Phase 2 Build Folder was a protected trade secret."

¶ 52    Additionally, defendants cross-appeal the trial court's refusal to award attorney fees to defendants, as well as the court's decision to award defendants only a portion of their costs. We address these contentions in turn.

¶ 53                              A. Jurisdiction

¶ 54    As a preliminary matter, however, we address defendants' contentions that we lack jurisdiction over certain aspects of this appeal. "The timely filing of a notice of appeal is both jurisdictional and mandatory." *Id.* Pursuant to Illinois Supreme Court Rule 303(a) (eff. July 1, 2017):

> "The notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely posttrial motion directed against the judgment is filed, whether in a jury or nonjury case, within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order, irrespective of whether the circuit court had entered a series of final orders that were modified pursuant to postjudgment motions."

Accordingly, a notice of appeal is timely if it is filed within 30 days of an order resolving a postjudgment motion to reconsider. *Id.* Still, "[a] postjudgment motion extends the time for filing a notice of appeal under Rule 303(a)(1) only when it seeks rehearing, retrial, modification or vacation of the judgment, or other similar relief." *Heiden v. DNA Diagnostics Center, Inc.*, 396 Ill. App. 3d 135, 138 (2009).

¶ 55    Here, defendants argue that "[p]laintiffs did not timely appeal the first four orders *** identified in their Notice of Appeal because it was not filed within 30 days of the September 22, 2022[,] Judgment." Defendants recognize that, on October 21, 2022, plaintiffs filed a postjudgment motion "admittedly entitled" as a "Motion for Reconsideration." While recognizing that such a motion would normally toll the 30-day deadline to file a notice of appeal, defendants nonetheless argue that plaintiffs' motion for reconsideration did not trigger the tolling provisions of Rule 303(a), as it did not actually attack the September 22, 2022, judgment. Instead, defendants point out that the arguments contained in plaintiffs' motion to reconsider solely related to the trial

court's September 1, 2022, denial of leave to file an amended complaint, as well as its January 2019 findings that plaintiffs did not properly allege a fiduciary relationship for defendants John and Tony. Because these orders were independent from the court's final September 22, 2022, judgment, defendants assert we are without jurisdiction to determine any issues arising from: (1) the March 23, 2022,[5] order denying plaintiffs' motion for leave to file a second amended complaint; (2) the July 1, 2022, order granting defendant's motion *in limine* barring certain evidence at trial; (3) the court's September 1, 2022, order denying plaintiffs' posttrial motion to conform; and (4) the September 22, 2022, order entering judgment for defendants.

¶ 56     We disagree. In determining that we have jurisdiction over the totality of the instant appeal, we first note that plaintiffs' motion to reconsider explicitly and repeatedly sought reconsideration of the court's final judgment, as necessary for it to qualify as a postjudgment motion directed against the judgment under Rule 303(a). *Heiden*, 396 Ill. App. 3d at 138. Furthermore, while defendants are correct that the court had previously dismissed plaintiffs' breach of fiduciary duty action against defendants John and Tony on January 23, 2019, this finding was incorporated into the court's final judgment. Accordingly, the motion to reconsider was directed against the court's final judgment, and we have jurisdiction to consider the instant appeal.

¶ 57          B. Savis's Motion for Leave to File a Second Amended Complaint

---

[5]Defendants argue that plaintiffs incorrectly claim this order was entered on February 10, 2022. However, the exact date of the order does not seem to have any bearing on defendants' jurisdictional arguments.

¶ 58    Turning to the merits, we first disagree with plaintiffs' arguments that the trial court abused its discretion in denying Savis's February 2022 motion for leave to file a second amended complaint. Pursuant to section 2-616(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-616(a) (West 2022)):

> "At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was inended to be brought or the defendant to make a defense or assert a cross claim."

Because trial courts enjoy broad discretion in deciding whether to allow a party to amend a pleading, an appellate court will not reverse a denial of a motion to amend absent an abuse of discretion. *Loyola Academy*, 146 Ill. 2d at 273-74. "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 59    In determining whether a court has abused its discretion in denying a motion to amend, we consider four factors: (1) "whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola*, 146 Ill. 2d at 273.

¶ 60    Plaintiffs argue that these four elements are met here, respectively, where: (1) Savis's proposed amendment was designed to bolster its prior breach of fiduciary duty claims by adding

specific factual allegations to those claims; (2) defendants would not have been prejudiced because they were already aware of the breach of fiduciary claim after it was previously pleaded and dismissed without prejudice; (3) the February 2022 motion to amend was timely where Savis acted with diligence, party depositions had just been completed on January 30, 2022, and where defendants had repeatedly delayed the proceedings; and (4) where Savis had no other opportunity to amend, given the existence of numerous discovery delays.

¶ 61    We disagree. After reviewing the applicable *Loyola* factors, the court's findings, and the parties' briefs, we conclude that plaintiffs have failed to show that the court abused its discretion in denying them leave to file their second amended complaint. Concerning the first *Loyola* factor, plaintiffs present us with the conclusory argument that their amendments sought to cure their prior amended complaint by bolstering the allegations surrounding their previously dismissed breach of fiduciary duty claim. However, plaintiffs' arguments are severely undercut by their abject failure to identify any specific allegations in the proposed, second amended complaint that accomplished this supposed purpose. Again, in January 2019, the trial court dismissed count II of the first amended complaint because plaintiffs had failed to show the existence of any fiduciary duty the Khoury brothers owed to Savis. Plaintiffs point to no allegations in their proposed complaint that would cure this problem, meaning plaintiffs have failed to show that their proposed amendments would have cured any defect in their first amended complaint. Instead, as the court noted, the sweeping nature of plaintiffs' second amended complaint—which included five additional counts, several new defendants, and hundreds of additional allegations—suggests that the main intent behind plaintiffs' proposed complaint was to assert entirely new causes of action against defendants. Accordingly, we agree with the trial court that this first *Loyola* factor weighs against plaintiffs.

¶ 62    We also disagree with plaintiffs' argument that the second *Loyola* factor weighs in their favor. Again, in arguing that the trial court abused its discretion, plaintiffs argue that defendants could not have been prejudiced by their reasserted breach of fiduciary duty claims, when similar claims were already raised in the previous amended complaint and dismissed without prejudice. However, plaintiffs ignore the trial court's legitimate concern that, given the sweeping, voluminous amendments plaintiffs proposed, along with the timing of the amendments, defendants would be left with inadequate time to prepare defenses to the hundreds of additional allegations leveled in the proposed complaint. We find the trial court's concerns to be valid, and plaintiffs provide us with no reasoning to dispute the trial court's specific concerns as to this second *Loyola* factor.

¶ 63    Concerning the third *Loyola* factor, plaintiffs acknowledge the extensive amount of time that had lapsed between the filing of their initial complaint and the filing of their motion for leave to file a second amended complaint. Plaintiffs lay blame for these delays solely on defendants' shoulders, and conclude that their proposed, second amended complaint would have been filed much sooner had not it been for defendants' dilatory discovery tactics. We agree that defendants did delay discovery by refusing to timely turn over certain documents to plaintiffs. However, plaintiffs also shoulder considerable responsibility in any delays in discovery. For instance, plaintiffs' lengthy delay to actually identify the pertinent trade secrets underlying the earlier complaint also caused extensive delays, as did their failure to provide discovery documents to defendants in an accessible manner. Because we consider both parties to be responsible for the extensive discovery delays in this case, we find that the third *Loyola* factor neither weighs for nor against amendment.

¶ 64    Regarding the final *Loyola* factor, we find that plaintiffs' proposed amendments could have been made at an earlier date. Throughout their brief, plaintiffs assert that "[t]he same facts that supported Savis's existing claims (trade secret violations and civil conspiracy)—supported the *** claims Savis sought to add in February 2022, which were all based on the fact that [d]efendants collaborated with one another to form a competing business and steal Savis's clientele." Thus, plaintiffs acknowledge that they were aware of the facts underlying certain of their proposed amendments years before filing the instant motion. Furthermore, while plaintiffs repeatedly argue that they could not have filed their motion any earlier, given the recent close of discovery, they do not describe any newly discovered facts from discovery to excuse their delay. Consequently, plaintiffs have failed to establish that the *Loyola* factors weigh towards amendment. Accordingly, plaintiffs have not shown that the court abused its discretion in denying them leave to file a second amended complaint.

¶ 65                                C. Savis's Posttrial Motion to Conform

¶ 66    Next, we disagree with plaintiffs' contentions that the trial court abused its discretion when it denied plaintiffs' request to amend to conform to proof. Pursuant to section 2-616(c) of the Code (735 ILCS 5/2-616(c) (West 2022)), "[a] pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." Again, the above-referenced *Loyola* factors must be considered in order to determine whether a trial court has abused its discretion in adjudicating a motion to amend. *Loyola*, 146 Ill. 2d at 273. Furthermore, "[i]n order for the circuit court to exercise its discretion in deciding on the motion, it must review the proposed amended pleading to determine whether it would cure the defect in the pleadings, whether it was timely, whether it prejudiced the opposing party, and whether there were previous opportunities to amend." *In re Huron Consulting Group,*

*Inc. Shareholder Derivative Litigation*, 2012 IL App (1st) 103519, ¶ 68. Where a party fails to make a proper motion to amend, the court does not abuse its discretion in denying the motion. *Id.*; *Loftus v. Mingo*, 158 Ill. App. 3d 733, 746 ("There is no presumption that a proposed amendment will be a proper one and it is not error to refuse to allow an amendment that has not been presented when there are no means of determining whether or not it will be proper and sufficient"). Where a party fails to attach a proposed pleading to a motion to amend, "[a] reviewing court is powerless to review the trial court's exercise of discretion." *Loftus*, 158 Ill. App. 3d at 746 (citing *Lowrey v. Malkowski*, 20 Ill. 2d 280 (1960)).

¶ 67    Plaintiffs argue that an analysis of the *Loyola* factors establishes that the court erred in denying its request to amend to conform to proof. Specifically, plaintiffs argue that: (1) pursuant to *McHale v. W.D. Trucking, Inc.*, 2015 IL App (1st) 132625, it is immaterial whether the proposed amendment cured any defect in the underlying pleading as long as it conformed to the proofs adduced at trial; (2) no surprise or prejudice would have resulted from the amendment, as plaintiffs' new claims "involved the same factual allegations as those the [d]efendants had been defending throughout these proceedings;" (3) the proposed amendment was timely under the Code; and (4) Savis had no prior opportunities to amend before trial due to the parties' ongoing discovery. On the other hand, defendants argue that plaintiffs cannot show that the trial court abused its discretion in denying plaintiffs' motion, because plaintiffs failed to attach a proposed amended complaint to their motion to conform.

¶ 68    We agree with defendants. Again, on August 5, 2022, plaintiffs filed their motion to conform. During the September 1, 2022, hearing on their motion, plaintiffs conceded that they did not attach a "draft amended complaint" to the motion, and no draft complaint appears in the record.

¶ 69    Because no proposed pleading was attached to plaintiffs' motion to conform, we are simply unable to analyze the applicability of the various *Loyola* factors without having read the specific allegations comprising the proposed amended complaint. Accordingly, we are unable to find that the court abused its discretion in denying plaintiffs' motion. *Loftus*, 158 Ill. App. 3d at 746.

¶ 70                                    D. Fiduciary Duties

¶ 71    Next, plaintiffs have forfeited their arguments that the trial court erred in finding that the Khoury brothers did not owe Savis any fiduciary duties. Parties are required to provide this court with coherent arguments concerning clearly defined issues. *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010). "Accordingly, we have the authority to hold that [a party] has forfeited [an] argument by failing to develop it," as this court is not "a repository into which an appellant may foist the burden of argument and research." *Id.* (citing *Stenstrom Petroleum Services Group, Inc. v. Mesch*, 375 Ill. App. 3d 1077, 1098 (2007)).

¶ 72    Here, plaintiffs argue that "the trial court erred in finding that, as a matter of law, defendants could not owe Savis a fiduciary duty." Plaintiffs cite certain record evidence in support of this argument, such as portions of the trial court's September 1, 2022, denial of leave to file an amended complaint in conformity with the proofs, as well as its September 22, 2022, final order. In response, defendants express confusion as to exactly what order or decision plaintiffs are challenging. In their reply, plaintiffs assert that their arguments are "clear," stating:

> "Since the trial court first dismissed Savis's breach of fiduciary claim in January 2019, the trial court repeatedly held that the Khoury brothers, by virtue of their business-to-business relationship with Savis, could not owe a fiduciary duty. Those legal conclusions were erroneous, they run contrary to established Illinois law, and they were a fundamental

reason why the [c]ourt dismissed Savis's breach of fiduciary claim in January 2019, why the court denied leave to amend in [March 2022], and why the court denied Savis's motion to amend to conform to proof after trial."

¶ 73    Like defendants, we find plaintiffs' arguments to be confusing and undeveloped as to the relief plaintiffs actually seek. In ascertaining exactly what decisions or orders plaintiffs seek relief from, five possible options come to mind: (1) the court's January 23, 2019, order dismissing count II (breach of fiduciary duty); (2) the court's March 23, 2022, order denying plaintiffs leave to file a second amended complaint; (3) the court's September 1, 2022, order denying plaintiffs leave to file an amended complaint in conformity with the proofs; (4) the court's September 22, 2022, final judgment, in which it found the Khoury brothers did not owe plaintiffs a fiduciary duty with regards to count X (conspiracy); or (5) any possible combination of these four orders.

¶ 74    Plainly, any analyses as to any combination of these orders would entail a different, specific analysis with varying standards of review. For instance, if plaintiffs mean to challenge the court's January 23, 2019, dismissal of count II—which alleged a breach of fiduciary duties— our analysis would necessarily involve an examination of count II of the first amended complaint, which plaintiffs do not discuss, along with the trial court's January 2019 order. On the other hand, if plaintiffs mean to challenge the court's September 22, 2022, findings that the Khoury's did not owe any fiduciary duties to Savis for purposes of a civil conspiracy, our analysis would involve an examination of the allegations outlining count X of the amended complaint, the pertinent trial evidence, and the court's findings as to count X.

¶ 75    Plaintiffs conflate all four of the above-referenced orders in a scattershot argument, jumping between portions of the record to haphazardly attack different aspects of these different decisions, all while failing to provide us with any meaningful analysis as to any one of the court's

above-stated decisions. Without knowing what order or orders plaintiffs are specifically seeking reversal of, we cannot determine the relevant scope of our review, and we are also without means to determine any appropriate relief. Essentially, plaintiffs have spilled a puzzle box full of arguments at our feet and expect us to place the pieces together in order to form a cogent theory of relief. However, we are not a repository onto which plaintiffs can foist the burden of argument, and we therefore find plaintiffs' arguments to be forfeited. *Velocity Investments, LLC*, 397 Ill. App. 3d at 297.

¶ 76 Forfeiture aside, even if we were to generously interpret plaintiffs' arguments as seeking reversal of the trial court's September 1, 2022, denial of leave to file an amended complaint in conformity with the proofs, as we have stated above, plaintiffs have failed to provide us with any proposed second amended complaint. Accordingly, even if plaintiffs were hypothetically correct that the court erred in finding that the Khoury brothers did not owe Savis any fiduciary duty, we would still be unable to find that the court abused its discretion in denying plaintiffs leave to file a second amended complaint in conformity with the proofs. *Loftus*, 158 Ill. App. 3d at 746.

¶ 77                                    E. Damages

¶ 78 Next, we disagree with plaintiffs' argument that "[r]eversal is also warranted, as Savis proved it was damaged due to [d]efendant's acts of conspiring together to breach the fiduciary obligations that [defendants] Proctor, Thomas[,] and Tony Khoury owed Savis." "A plaintiff is entitled to recover all damages which naturally flow from the commission of the tort, although he must prove them with reasonable certainty and the damages must be the natural result of the wrong inflicted and not speculative." *Kritzen v. Flender Corp.*, 226 Ill. App. 3d 541, 557 (1992). "As a general rule, courts of review in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided."

*In re Barbara H.*, 183 Ill. 2d 482, 491 (1998). "When a decision on the merits would not result in appropriate relief, such a decision would essentially be an advisory opinion." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10.

¶ 79    According to plaintiffs, "[h]ad Savis been granted leave to amend to add a breach of fiduciary duty claim and conspiracy to breach fiduciary duty claim—there was ample evidentiary support for the trial court to award Savis damages." Plaintiffs go on to detail all of the record evidence supporting a finding of damages, asserting that "[t]he testimony and financial records presented to the trial court were substantial."

¶ 80    In response, defendants argue that plaintiffs' contentions as to the existence of damages are irrelevant. According to defendants:

> "[t]wo of Savis's claims made it to trial, namely its [c]ount III trade secret claim and its [c]ount X conspiracy claim. It is undisputed—and Savis does not appeal—that the circuit court found that Savis failed to prove that it had any protectible trade secret, failed to prove that any secret had been misappropriated, and failed to set forth any basis on which a conspiracy claim could be sustained."

Essentially, defendants argue that plaintiffs' contentions regarding damages are moot, as plaintiffs have neither proved defendants liable for counts III and X, nor appealed the trial court's findings as to liability.

¶ 81    We agree with defendants. Here, three counts from plaintiffs' amended complaint proceeded to trial: (1) count III (violation of the Act); (2) count VIII (conversion); and (3) count X (conspiracy). As defendants assert, only counts III and X were brought specifically on behalf of Savis; count VIII was "brought only in the name of Triple Take." Accordingly, counts III and

X form the scope of our review, as these were the only viable counts involving Savis that are implicated in the final judgment.

¶ 82    In its September 22, 2022, judgment, the trial court found that, with regards to count III, "[p]laintiffs [had] not met their burden of demonstrating the existence of an identifiable trade secret or its misappropriation by [d]efendants," meaning "the [c]ourt need not and [did] not consider whether, and what amount of, damages might be appropriate and proven." Concerning count X, the court found that Savis failed to show any "illegal or tortious conduct to support any of the underlying claims in this suit," meaning "there [was] no conspiracy." In sum, the court found that Savis had not met its burden in proving defendants liable for counts III and X. Because there was no finding of liability stemming from these counts, Savis had not shown that they were entitled to *any* damages, meaning any analysis as to damages could not possibly lead to any relief for Savis. Accordingly, we decline to address the moot issue, as any analysis as to damages would amount to an impermissible advisory opinion. *Barbara H.*, 183 Ill. 2d at 491.

¶ 83                           F. Phase 2 Build Folder

¶ 84    Next, we disagree with plaintiffs' arguments that the trial court abused its discretion in prohibiting Savis from introducing evidence that the contents of its Phase 2 Build folder contained protected trade secrets. "The determination of the admissibility of evidence rests primarily in the discretion of the trial court, and its decisions will be reversed only upon a clear abuse of that discretion." *Johnson v. Tipton*, 103 Ill. App. 3d 291, 297 (1982).

¶ 85    Plaintiffs argue that, pursuant to the trial court's April 14, 2021, order requiring plaintiffs to identify the trade secrets at issue in count III of the amended complaint, plaintiffs eventually disclosed the existence of the Phase 2 Build folder in its supplemental answers to interrogatories.

For this reason, plaintiffs assert that the trial court erred when finding that the documents "were not properly disclosed," leading the court to improperly bar any introduction of the folder at trial.

¶ 86    In their response, defendants argue that, even if plaintiffs are correct that court erred in barring any evidence of the Phase 2 Build Folder at trial, "any error was harmless because, as the circuit court found, the AveXis contract specified that this folder belonged to [AveXis]. [Citation.] Thus, under no circumstances can the Phase 2 Folder be Savis's trade secret." In their reply, plaintiffs offer no rebuttal to this argument.

¶ 87    Because plaintiffs' arguments are once again moot, we decline to consider whether the court erred in precluding any evidence of the Phase 2 Build folder. "As a general rule, courts of review in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *Barbara H.*, 183 Ill. 2d at 491.

¶ 88    Here, in its September 22, 2022, final judgment, the court discussed its decision to preclude plaintiffs from introducing evidence pertaining to the folder:

>        "At trial, the Court sustained the Defendants' objections that Savis had not properly disclosed documents within the AveXis Phase 2 Build/Buy Project Google Drive folder as trade secrets that had been misappropriated. Nonetheless, to the extent the Court erred in this regard or permitted certain limited testimony concerning the AveXis Phase 2 Build/Buy Project at trial, it is important to note that any files from Savis' 'AveXis Phase 2 Build/Buy Project' folder that were copied or uploaded by or at the direction of Defendants were the confidential property of *AveXis, not the property of Savis* under the Savis/AveXis Consulting Agreement." (Emphasis in original).

¶ 89    From this language, it is clear that the trial court found that the folder was AveXis's "confidential property." Consequently, regardless of whether the folder and its contents were admissible, it could not possibly have supported Savis's trade secrets claim, as the parties' consulting agreement establishes that the folder was AveXis's property. *Liebert Corp v. Mazur*, 357 Ill. App. 3d 265, 276 (2005) (trade secret must be "sufficiently secret" and plaintiff must take steps to maintain its confidentiality). Otherwise put, even if the folder *were* admissible, plaintiffs would not be entitled to any relief stemming from count III of the amended complaint, because the trial court had already found that the folder's contents could not have possibly contained Savis's trade secrets. Again, Savis does not dispute this finding on appeal. Accordingly, because plaintiffs would not be entitled to any relief even if the folder were admissible, the issue is moot, and we do not consider it. *Barbara H.*, 183 Ill. 2d at 491.

¶ 90                            G. Defendant's Attorney Fees and Costs

¶ 91    Next, we disagree with defendants' arguments that the trial court abused its discretion in denying defendants' requests for attorney fees and partially denying defendants' requests for costs. Court orders concerning attorney fees and costs, both under the Act and the Code, may only be reversed upon a showing of an abuse of discretion. *Multimedia Sales & Marketing, Inc. v. Marzullo*, 2020 IL App (1st) 191790, ¶ 29; *Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co.*, 356 Ill. App. 3d 471, 485 (2005).

¶ 92                                    1. Attorney Fees

¶ 93    Pursuant to the Act, if "a claim of misappropriation is made in bad faith," "the court may award reasonable attorney's fees to the prevailing party." 765 ILCS 1065/5 (West 2022). The Act does not define "bad faith." *Id.* In *Concall Corp. v. Iconn Systems, LLC*, 2016 IL App (1st) 140158, however, the First District identified two separate tests for determining whether one has

acted with bad faith under the Act. There, Justice Delort found that a two-pronged test articulated by the California Court of Appeals in *SASCO v. Rosendin Electric, Inc.*, 207 Cal. App. 4th 837 (2012), was the appropriate standard for determining bad faith in the context of the Act. *Id.*, ¶¶ 31-32. Under that test, one must consider whether a trade secrets claim under the Act was: (1) objectively specious; and (2) subjectively made in bad faith. *Id.*, ¶ 35.

¶ 94     On the other hand, Justices Rochford and Hoffman agreed that the term "bad faith" "should be given the preexisting definition of 'bad faith' " of this state." *Concall Corp. v. Iconn Systems, LLC*, 2016 IL App (1st) 140158, ¶ 95 (Rochford, J., specially concurring, joined by Hoffman, J.). Otherwise put, these justices found that the correct "standard for determining a party's bad faith *** is (1) whether the pleadings, motions and other papers which were filed by the party violated Rule 137 or (2) whether the party's other conduct during the course of litigation ran afoul of the underlying purpose of Rule 137." *Id.*, ¶ 99.

¶ 95     Here, defendants seem to argue that Savis's maintenance of count III constituted bad faith under either applicable standard. Defendants point to eight "circumstances" purportedly demonstrating Savis's bad faith in bringing their trade secrets claim: (1) that Savis exhibited "continued aimlessness" in articulating the trade secrets at issue; (2) Savis's four year delay in identifying its allegedly misappropriated trade secrets; (3) Savis's failure to consider the parties' consulting agreement, which provided that AveXis owned any and all work Savis performed for the company; (4) the lack of any forensic investigation by Savis; (5) Savis's purported plans to have Mussman ambiguously testify that defendants "must have taken [Savis's] information[,] otherwise Project Farma would not have been able to service AveXis;" (6)Savis's failure to meaningfully address or discuss its 13 admitted alleged trade secrets at trial; (7) Savis's lack of a viable damages theory; and (8) Savis's abandonment of certain, pertinent claims. Defendants

reason that the trial courts' refusal to award them attorney fees under the Act constituted an abuse of discretion.

¶ 96    We disagree. We note that defendants draw a reasonable inference that the delays and inability of Savis to identify specific and precise trade secrets smacks of bad faith. However, the trial court also drew a reasonable inference that, based on the evidence adduced at trial, Savis was simply unable to carry its burden of proving the existence of a protectable trade secret, not that it was fabricating a claim out of whole cloth. Specifically, given Tony's cryptic communications with Proctor and Thomas after he had already ended his working relationship with Savis, which were contemporaneous with AveXis terminating its relationship with Savis, certain evidence *did* suggest that Tony, Proctor, or Thomas downloaded files from Savis's drive for Project Farma's use. Accordingly, as the trial court found, there was a reasonable basis for Savis to believe that defendants had engaged in wrongdoing, even if Savis ultimately failed to prove specifically which files defendants downloaded from Savis's drive. Because the court's ultimate findings were supported by the record, its denial of defendants' request for attorney fees was not an abuse of discretion.

¶ 97                                    2. Costs

¶ 98    Finally, defendants have failed to show that the court abused its discretion in awarding them only a portion of their sought-after costs. "A prevailing party may receive costs only where a statute or supreme court rule so provides." *Burmac*, 356 Ill. App, 3d at 485. With this in mind, section 5-109 of the Code provides:

> "If any person sues in any court of this state, in any action, wherein the plaintiff
>
> may have costs in case judgment is entered in favor of the plaintiff and the action is
>
> voluntarily dismissed by the plaintiff or is dismissed for want of prosecution or judgment

is entered against the plaintiff, then judgment shall be entered in favor of defendant to recover defendant's costs against the plaintiff." 735 ILCS 5/5-109 (West 2022).

¶ 99　Here, defendants argue that, because section 5-109 indicates that a court "shall" award a prevailing defendant court costs, the court was required to award defendants the total of any transcription costs incurred at trial, regardless of the parties' pretrial, email agreement to the contrary. Specifically concerning the agreement, defendants argue that they are "not aware of any case law holding that a prevailing party can contract away its rights under [section 5-109]."

¶ 100　We disagree. Even if the use of the word "shall," as used in section 5-109 created an absolute, statutory right for defendants to recover their transcription costs, "[i]t is fundamentally accepted that parties may contract away rights, even of constitutional dimension, as well as statutory rights." *Gaylor v. Village of Ringwood*, 363 Ill. App. 3d 543, 549 (2006). Here, the trial court reasonably found that defendants contracted away any rights to recover these transcription costs, pursuant to the parties' June 13, 2022, email exchange. This finding comports with applicable case law such as *Gaylor*, so we find that the court did not abuse its discretion in requiring both parties to split the court transcription costs.

¶ 101　　　　　　　　　　　　　　III. CONCLUSION

¶ 102　For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 103　Affirmed.