2024 IL App (1st) 232316-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
August 26, 2024

No. 1-23-2316

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| SHRINERS HOSPITALS FOR CHILDREN and THE AMERICAN HEART ASSOCIATION, | ) ) ) | |
| Plaintiffs-Appellees and Cross-Appellants, | ) ) ) | Appeal from the Circuit Court of Cook County |
| v. | ) ) | No. 20 CH 5255 |
| RICHARD M. RUGGIERO, Individually and in his capacity as Successor Trustee of the Lena De Benedetto Revocable Living Trust, dated September 19, 2003, and Amended on November 1, 2005, and September 30, 2011, | ) ) ) ) ) | The Honorable Michael T. Mullen, Judge Presiding. |
| Defendant-Appellant and Cross-Appellee. | ) ) ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1   *Held:* The appellate court affirms the trial court's granting of the plaintiffs' motion for summary judgment, its entry of judgment against the defendant in his individual capacity, its granting of a motion for sanctions, and its denial of punitive damages. The appellate court reverses the trial court's award of only partial attorney fees and costs and remands for entry of an award of full attorney fees and costs.

¶ 2      The plaintiffs, Shriners Hospitals for Children (Shriners) and the American Heart

Association, filed this action for accounting and breach of fiduciary duty against the defendant, Richard M. Ruggiero, individually and in his capacity as successor trustee of the Lena De Benedetto Revocable Living Trust, dated September 19, 2003, and amended on November 1, 2005, and September 30, 2011 (Trust). The trial court granted the plaintiffs' motion for summary judgment, finding that the defendant wrongfully converted $290,200 in trust assets to himself as unsubstantiated "trustee fees" and ordering him to provide an accounting and to reimburse the trust within 21 days. After the defendant failed to provide an accounting or reimbursement, the trial court entered judgment against the defendant in his individual capacity. The trial court also awarded certain attorney fees and costs in favor of the plaintiffs, and it granted a motion for sanctions against the defendant for failing to comply with discovery.

¶ 3    The defendant appeals the trial court's entry of summary judgment, its denial of his request for additional time to file a response to the motion for summary judgment, its entry of judgment against him individually, its awarding of attorney fees and costs to the plaintiffs, and its granting of a motion for sanctions. The plaintiffs have filed a cross-appeal challenging the amount of attorney fees and costs allowed by the trial court and its denial of their request for an award of punitive damages. We affirm in part, reverse in part, and remand for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5    The following facts are established by the pleadings, affidavits, admissions, and depositions attached to the plaintiffs' motion for summary judgment, to which the defendant filed no response or counteraffidavit. Following the death of Lena De Benedetto on December 30, 2017, the defendant, who was her nephew and an Illinois licensed attorney, became successor trustee of the Trust. According to the terms of the Trust, the successor trustee was directed to sell Lena De Benedetto's condominium and thereafter to distribute the sale proceeds in monthly installments to

her son, Robert De Benedetto. The Trust further provided that if Robert De Benedetto were to die while funds remained in the Trust, "then the trustee shall distribute the then remaining principal and all accrued or undistributed net income of the trust, if any, in equal share to the following four charities: The American Heart Association, the Lupus Foundation, the Pacific Garden Mission, and the Shriners' Hospital for Children." Robert De Benedetto died on August 24, 2018.

¶ 6        Upon assuming the role of successor trustee, the defendant did not inform the plaintiffs that they were residuary beneficiaries of the Trust. Further, the defendant never distributed any money from the Trust to the named plaintiffs, the Lupus Foundation, or the Pacific Garden Mission. In March 2019, anonymous phone calls were made to both plaintiffs, informing them of the Trust and that they were named as residuary beneficiaries in it. Trust documents and the death certificates of both Lena and Robert De Benedetto were also faxed to them. Almost immediately, attorneys on behalf of the plaintiffs began communicating with the defendant, seeking information about the Trust's assets and distribution.

¶ 7        At the time of Robert De Benedetto's death, the Trust owned two certificates of deposit with a combined value of approximately $80,134. In March 2019, the defendant withdrew the balance of one of those certificates of deposit in the amount of $49,740.69, and he deposited that sum into a checking account that he opened in the name of the Trust. In May 2019, the condominium sold, which resulted in an additional $222,782 being deposited into that checking account. Between April and August 2019, the defendant wrote several checks out of that account for payment of real estate taxes, the fee of the condominium land trustee, cleaners' and movers' charges, attorney fees, utilities, and funeral expenses. The total of those payments was $12,492.34.

¶ 8        In addition, between April 5, 2019, and December 22, 2020, the defendant wrote 64 checks out of that account to himself for "trustee's fees," for a total of $259,000. This left a balance of

$370 in that first checking account. In January 2021, the defendant opened a second checking account in the name of the Trust, into which he deposited the proceeds of the other certificate of deposit owned by the Trust, which totaled $31,268.96. Between January 29, 2021, and May 24, 2021, the defendant proceeded to write 8 additional checks to himself for "trustee's fees/misc.," for a total of $31,200. This left a balance of $68.96 in the second account.

¶ 9        Between late-March 2019 and the filing of this case on August 4, 2020, substantial communication occurred between the defendant and representatives of the plaintiffs. Most of these communications were between the defendant and representatives of Shriners. In summary, they demonstrate a pattern whereby the defendant would repeatedly state to the plaintiffs' representatives that issues had arisen that prevented him from winding up administration of the Trust and sending the funds to the plaintiffs by the date promised, but that he expected to be able to send the funds sometime within the upcoming month. This pattern continued on approximately a monthly basis through April 2020, when the defendant stated that he would finish his work and send payment "[a]s soon as things lift" from the closures related to COVID-19.

¶ 10        Based upon the above facts, the plaintiffs filed a motion for summary judgment on their claims for accounting and breach of fiduciary duty. As to their claim for accounting, they argued that no genuine issue of material fact existed as to their right as residuary trust beneficiaries to an accounting from the defendant as successor trustee, which the defendant had never given to them. See 760 ILCS 3/813.2 (West 2020). As to their claim for breach of fiduciary duty, they argued that no genuine issue of material fact existed that the defendant, as successor trustee, had breached his duty of loyalty and to administer the trust in good faith. See *id.* §§ 801, 802. They argued that this was shown by the evidence that, at the same time the defendant was promising the plaintiffs that "the check was literally 'in the mail,' " he was simultaneously writing checks to himself totaling

$290,200. Most of these checks were written after his only duty as successor trustee (selling the condominium) had been completed, and some were written even after this litigation had been filed. He neither provided notice to the beneficiaries nor obtained their approval to write these checks to himself, and he had provided no evidence substantiating any work done as trustee.

¶ 11   The plaintiffs' motion for summary judgment was substantiated with the defendant's sworn interrogatory answers and responses to the request for production; sworn affidavits from officers of the two plaintiffs, the Lupus Society of Illinois, and the Pacific Garden Mission; and documents produced in response to subpoenas by Parkway Bank & Trust Co., First Midwest Bank, Stewart Title Company, and Bank of America. The plaintiffs also attached the defendant's discovery deposition, in which the defendant had asserted his Fifth Amendment right against self-incrimination in response to nearly every question relating to his actions as successor trustee of the Trust. The plaintiffs argued that the defendant's repeated invocation of his Fifth Amendment rights in his discovery deposition precluded him from offering any affidavit or testimony to rebut the evidence in the summary judgment record and permitted the court to draw an adverse inference against the defendant.

¶ 12   Prior to the filing of the above motion for summary judgment, the trial court had set a briefing schedule pertaining to it. Thus, on January 26, 2023, the court ordered that the plaintiffs' motion was due by March 2, 2023, and the plaintiffs filed it within that time. It also ordered that the defendant's response was due by March 30, 2023, that the reply brief was due by April 14, 2023, and that a further status hearing was set for April 18, 2023. That same order also provided that all discovery was due by March 15, 2023.

¶ 13   The defendant never filed a response to the plaintiffs' motion for summary judgment, and he did not appear at the status hearing on April 18, 2023. Accordingly, the trial court entered an order

dated April 20, 2023, which provided that briefing on the motion for summary judgment was closed and that hearing on it was scheduled for May 9, 2023.

¶ 14     At the hearing of May 9, 2023, the defendant orally requested that the trial court "reopen discovery so I can present my defense" and respond to the motion for summary judgment. He referenced that he had been experiencing a respiratory illness since March. He did not state anything as to the merits of any defense he intended to present. The trial court denied this request for a continuance or to reopen discovery. The court stated that the defendant had been aware of the briefing schedule's requirements, and it specifically found that the defendant's decision not to file a response brief or to appear at the status hearing on April 18, 2023, was "another effort on [the defendant's] part to manipulate these proceedings." The trial court found that the defendant's failure to respond to the motion for summary judgment was "not an omission," and it stated that he was "going to live with that decision."

¶ 15     Accordingly, the trial court granted the plaintiffs' motion for summary judgment in an order entered May 16, 2023. In so doing, the trial court found that the undisputed evidence established that the defendant, as successor trustee of the Trust, failed to provide material information to the plaintiff beneficiaries, failed to provide any accounting to them, made repeated false statements to them, failed to wind up the trust at its termination date, and "took from the [T]rust at least $290,200.00 in trust money that he did not have a right to."

¶ 16     The relief granted by the trial court included removing the defendant as successor trustee of the Trust; ordering him to provide a full accounting to the plaintiffs and the court by May 30, 2023; and ordering him to reimburse $290,200 to the Trust by June 6, 2023, after which time the court would enter judgment against him individually if he failed to make this reimbursement. The trial court also awarded attorney fees and costs to the plaintiffs, directing them to present a fee petition

within 28 days. Finally, the trial court denied the request in the plaintiffs' motion for summary judgment to award punitive damages.

¶ 17    In addition to ruling on the motion for summary judgment, at the hearing of May 9, 2023, the trial court also ruled on two motions for sanctions. Both of these motions were filed by the plaintiffs, based on the defendant's various delays in complying with discovery obligations. The facts pertinent to these motions for sanctions are set forth in the analysis below. *Infra* ¶¶ 54-60. The trial court denied the plaintiffs' first motion for sanctions. It granted their second motions for sanctions, but its written order provided that, "[i]n light of the relief awarded on summary judgment, no additional relief is awarded."

¶ 18    On June 15, 2023, the defendant filed a motion to reconsider and vacate the trial court's order as set forth in the preceding paragraphs. That motion by the defendant also requested that the trial court "reopen discovery," allow him to answer "certain discovery and pleadings," and grant him leave to respond in writing to the motion for summary judgment. The motion attached as an exhibit a document purporting to show that Lena De Benedetto had made handwritten amendments to the second amendment to the Trust on October 16, 2013. The amendments that she purportedly made included lining through the names of the four charities in the paragraph concerning residuary beneficiaries and in their place handwriting that any funds remaining in the Trust upon the death of Robert De Benedetto should be distributed to "my nephew and godson Richard Ruggiero, as beneficiary and for advise [*sic*] esp. Robert, and for taking care of Robert." A second document was also attached as an exhibit to the motion, in which Lena De Benedetto had purportedly written her initials next to these same changes to the Trust on July 15, 2015. The defendant's motion to reconsider also set forth an extensive history of the health problems that the defendant had experienced in the first half of 2023, including a diagnosis of " 'long Co-Vid' " on February 3,

2023. It argued that he was "disabled to the point of being unable to present his defense."

¶ 19 The plaintiffs filed a response to the defendant's motion to reconsider. They emphasized that the defendant was attempting to rely upon two documents naming him as the Trust's residuary beneficiary in place of the plaintiffs and other charities, which he had never previously mentioned or produced during discovery. They also pointed out that the defendant had provided no affidavit or evidence as to the authenticity of the purported handwritten amendments.

¶ 20 On June 29, 2023, the trial court entered an order denying all relief requested in the defendant's motion to reconsider. Although the trial court's written order states that the motion was denied "for the reasons stated on the record at the hearing," no transcript of this hearing is contained in the record on appeal.

¶ 21 Separately, the plaintiffs filed an itemized fee petition pursuant to the trial court's order granting summary judgment. In it, they requested attorney fees of $46,062.00 and costs of $5,462.31 covering the entirety of the litigation, for a total of $51,524.31. The defendant filed a response to this fee petition, in which he argued, *inter alia*, that the plaintiffs were entitled only to those fees and costs incurred due to the defendant's conduct during the course of litigation that the trial court had found sanctionable, not all of their fees and costs for the entire case. In ruling, the trial court stated that it agreed with the defendant on this point. It awarded $16,797.00 in attorney fees and $1,528.14 in costs that it found to be directly related to the sanctionable conduct that occurred for the period of April 15, 2021, and May 1, 2022, for a total of $18,325.14.

¶ 22 Finally, on November 9, 2023, the trial court granted a motion by the plaintiffs for entry of judgment against the defendant in his individual capacity. It made a finding that, as of that date, the defendant had not reimbursed the Trust any of the funds that he had taken from it, as had been ordered by the trial court's order dated May 16, 2023. Accordingly, the trial court entered judgment

in favor of Shriners and against the defendant individually in the amount of $81,712.57. It also entered judgment in favor of the American Heart Association and against the defendant individually in the amount of $81,712.57. (These sums reflect one quarter of the $290,200.00 to which each plaintiff was entitled under the terms of the Trust, plus one half of the $18,325.14 in attorney fees and costs awarded.) This cross-appeal then followed.

¶ 23                                   II. ANALYSIS

¶ 24                          A. Motion for Summary Judgment

¶ 25        The first principal argument raised by the defendant on appeal is that the trial court erred in granting the plaintiffs' motion for summary judgment. A motion for summary judgment is properly granted where the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). The question of whether a trial court properly granted a motion for summary judgment is an issue that we review *de novo*. *Givens v. City of Chicago*, 2023 IL 127837, ¶ 46.

¶ 26        The defendant's sole challenge to the trial court's granting of the motion for summary judgment is that it "ignored the evidence" that Lena De Benedetto had made two handwritten amendments to the face of the second amendment to the Trust (first on October 16, 2013, and affirmed by her initials on July 15, 2015) that eliminated the four charities as the Trust's residuary beneficiaries and substituted the defendant as residuary beneficiary in their place. The defendant argues that the evidence of these handwritten amendments raised a genuine issue of material fact as to the operative terms of the Trust and which party Lena De Benedetto intended to be its residuary beneficiary.

¶ 27        We reject the argument by the defendant that the trial court erred in failing to consider this

evidence in granting the motion for summary judgment, because evidence of the purported handwritten amendments to the Trust was not part of the record at the time the trial court ruled. Instead, the defendant acknowledges that these documents were produced for the first time as exhibits attached to the motion to reconsider.

¶ 28    The scope of appellate review of a summary judgment motion is limited to the record as it existed at the time the trial court ruled. *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 947 (1993). Material that was not properly before the trial court at the time it ruled on a motion for summary judgment will not be considered by the appellate court in evaluating the propriety of the trial court's ruling. See *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 42 (citing *Campos v. Campos*, 342 Ill. App. 3d 1053, 1066 (2003)); accord *Simmons v. Reichardt*, 406 Ill. App. 3d 317, 323 (2010) ("To hold otherwise would mean reversing the trial court based upon evidence it never heard"). Further, the submission of new matter on a motion for reconsideration after a motion for summary judgment has been granted lies in the discretion of the trial court, but it should not be allowed in the absence of a reasonable explanation of why it was not available at the time of the original hearing. *Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 195 (1989).

¶ 29    In this case, nothing in the plaintiffs' motion for reconsideration suggests any reasonable explanation why the purported handwritten amendments were not tendered in discovery or presented to the trial court prior to its ruling on the motion for summary judgment. Accordingly, we find no basis for considering them in evaluating the propriety of summary judgment. Furthermore, the defendant is not challenging the merits of the trial court's denial of the motion for reconsideration of summary judgment, a ruling that we would review for abuse of discretion. See *Robidoux v. Oliphant*, 201 Ill. 2d 324, 347 (2002). The motion for reconsideration is the only

motion in which the trial court was asked to consider the handwritten amendments. We have no insight as to how the trial court viewed this new evidence when it was presented (or its exact reasoning for denying the motion to reconsider) due to the defendant's failure to include a transcript of that hearing in the record on appeal. As appellant, the defendant has the burden of presenting a sufficiently complete record to support a claim of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). In the absence of such a record on appeal, the appellate court will presume that the order entered by the trial court was in conformity with the law and had sufficient factual basis. *Id.* at 392. Any doubts arising from the incompleteness of the record are resolved against the appellant. *Id.* These principles apply here, and they require us to presume that the trial court properly declined to consider the evidence of the purported handwritten amendments due to the defendant's failure to present it in a timely fashion or offer a reasonable excuse for his failure to do so. See *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248 (1991). Thus, we conclude that the defendant has provided no basis whereby this court may consider evidence of the purported handwritten amendments in reviewing the trial court's granting of the motion for summary judgment.

¶ 30    As stated, the defendant does not challenge the merits of the trial court's entry of summary judgment on any basis other than the purported handwritten amendments, which we may not consider. We also reiterate that summary judgment was granted after the defendant failed to provide any written response to the plaintiffs' motion, which was well-supported by affidavits and other evidentiary materials substantiating the facts set forth therein. The consequence of the defendant's failure to respond to such a motion with counteraffidavits, deposition testimony, or other matter of an evidentiary nature is that all uncontested facts set forth in the sworn affidavits filed by the plaintiffs must be accepted as true for purpose of deciding the motion for summary

judgment. *Sacramento Crushing Corp. v. Correct/All Sewer, Inc.*, 318 Ill. App. 3d 571, 576 (2000).

¶ 31        Accepting as true the uncontested facts in the plaintiffs' affidavits, it is clear that these facts entitle the plaintiffs to judgment as a matter of law on their claims for accounting and breach of fiduciary duty. Concerning the plaintiffs' entitlement to accounting, section 813.2(b)-(c) of the Illinois Trust Code provides:

> "(b) Every trustee at least annually shall furnish to the beneficiaries then entitled to receive or receiving the income from the trust estate, or, if none, then to those beneficiaries eligible to have the benefit of the income from the trust estate, a current account showing the receipts, disbursements, and inventory of the trust estate.

> (c) Every trustee shall on termination of the trust furnish to the beneficiaries then entitled to distribution of the trust estate a final account for the period from the date of the last current account to the date of distribution showing the inventory of the trust estate, the receipts, disbursements, and distributions and shall make available to the beneficiaries copies of prior accounts not previously furnished." 760 ILCS 3/813.2(b)-(c) (West 2020).

The plaintiffs' claim for breach of fiduciary duty requires them to establish (1) a fiduciary duty on the part of the defendant, (2) a breach of that duty, (3) damages, and (4) proximate cause between the breach and damages. *Gearhart v. Gearhart*, 2020 IL App (1st) 190042, ¶ 144. " '[A] trustee owes a fiduciary duty to a trust's beneficiaries and is obligated to carry out the trust according to its terms and to act with the highest degrees of fidelity and utmost good faith.' " *Id.* (quoting *Fuller Family Holdings, LLC v. Northern Trust Co.*, 371 Ill. App. 3d 605, 615 (2007)); accord 760 ILCS 3/801, 802 (West 2020)).

¶ 32        The uncontested facts in the plaintiffs' affidavits establish all requisite elements of these two causes of action. The uncontested facts establish the existence of the Trust, that the defendant acted

as its successor trustee, and that the plaintiffs (together with the Lupus Foundation and the Pacific Garden Mission) were residuary beneficiaries entitled to the funds remaining in the Trust upon the death of Robert De Benedetto in 2018. The uncontested facts further establish that the defendant never provided any accounting to the plaintiffs or made any disbursements to them, despite repeatedly promising between June 2019 and April 2020 that he would disburse the Trust's funds to the plaintiffs on an imminent basis. The uncontested facts also establish that, while making these promises to disburse funds to the plaintiffs, the defendant was simultaneously writing checks to himself for "trustee fees" in an amount that totaled $290,200, thereby depleting nearly all of the Trust's known assets by May 2021. The defendant did this without substantiating the reasons for these payments of trustee fees, informing the plaintiffs of these payments to himself, or obtaining the approval of the plaintiffs or the court for these payments. These uncontested facts entitle the plaintiffs to judgment as a matter of law on both claims, and thus the trial court properly granted the plaintiffs' motion for summary judgment.

¶ 33        B. Allowing Late Response to Motion for Summary Judgment

¶ 34        The defendant's second principal argument on appeal is that the trial court "erred in refusing [his] request for additional time to complete and file responses to the plaintiffs' motion for summary judgment, and in denying him leave to file late responses to the plaintiffs' motions." The defendant asserts that he developed a chronic condition known as "long COVID," and he argues that this constituted a disability that the trial court wrongfully failed to accommodate.

¶ 35        As we interpret his argument, the first ruling that he challenges occurred on May 9, 2023, when the trial court denied the oral motion, which he made at oral argument on the motion for summary judgment, to continue that hearing, reopen discovery, and allow him additional time to file a written response to that motion. The defendant gave multiple reasons for this request, one of

which was that he had suffered from an acute respiratory illness in March 2023 that had required a 10-day course of steroids that had "knocked me out." As a result of this, he argued, he had been unable to prepare a response to the motion for summary judgment or to file a written motion for continuance in advance of the hearing.

¶ 36     In rejecting the defendant's request for additional time to file a response, the trial court stated that the defendant had been well-aware of the briefing schedule that set a deadline for him to file a response to the motion for summary judgment by March 30, 2023, and set a status hearing for April 18, 2023. The trial court specifically found that the defendant's failure to file a response or to attend the status hearing constituted "another effort on [the defendant's] part to manipulate these proceedings." The trial court further found that his failure to respond to the motion was "not an omission" and that he was "going to have to live with that decision."

¶ 37     Decisions about whether to continue a hearing on a motion or to extend or modify a briefing schedule are within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. See *TIG Insurance Co. v. Canel*, 389 Ill. App. 3d 366, 375 (2009); *O'Neill v. Brown*, 242 Ill. App. 3d 334, 343 (1993). The diligence exercised by the party seeking a continuance is a critical factor in determining whether a trial court abused its discretion by denying such a request. *O'Neill*, 242 Ill. App. 3d at 343.

¶ 38     We conclude that the trial court did not abuse its discretion on May 9, 2023, when it denied the defendant's oral motion to continue the hearing on summary judgment, reopen discovery, and allow additional time for the filing of a response. The record demonstrates that, leading up to this request, the defendant had requested and received many extensions to perform basic functions of litigation: answering the complaint, completing written discovery, and sitting for a deposition. See *infra* ¶¶ 54-60. Many of these extensions were the product of requests sought at the last minute.

We cannot say that the defendant acted with diligence at any point in this case, particularly in this instance where he waited until the day of oral argument on a dispositive motion to request more time. The trial court was in a far better position than this court to evaluate whether this particular request was made in good faith (including because of the effects of "long COVID" or other health matters) or an attempt to abuse the litigation process or delay resolution of the case. See *J.S.A. v. M.H.*, 224 Ill. 2d 182, 196 (2007).

¶ 39    The second ruling challenged by the defendant occurred on June 29, 2023, when the trial court denied his motion to reconsider and vacate the order of May 16, 2023, reopen discovery, allow him to answer certain discovery and pleadings, and grant him leave to file a written response to the motion for summary judgment. However, as discussed above, the defendant failed to include in the record on appeal a transcript of the hearing in which this motion was presented to the trial court. Thus, we have no insight into the trial court's exact reasoning for denying the defendant's request for more time, so as to evaluate whether it abused its discretion in doing so. The defendant's failure to provide a transcript or bystander's report results in the presumption that the trial court's ruling was in conformity with the law and that it had sufficient factual basis. *Foutch*, 99 Ill. 2d at 392. Accordingly, we lack any basis upon which to find that the trial court abused its discretion on that date when it denied the defendant's requests to reopen discovery or revisit briefing of the motion for summary judgment.

¶ 40                    C. Judgment in Individual Capacity

¶ 41    The defendant's third principal argument on appeal is that the trial court erred by entering judgment against him in his individual capacity. His argument on this point is materially identical to his argument against summary judgment, which is that the same issues of fact that warranted denial of the motion for summary judgment precluded entry of judgment against him individually.

In other words, the purported handwritten amendments from 2013 and 2015 raised genuine issues of material fact as to the operative terms of the Trust and which party was residuary beneficiary.

¶ 42 We reject the argument that the trial court erred by entering judgment against defendant in his individual capacity. We have addressed above the fact the trial court properly granted the motion for summary judgment in favor of the plaintiffs and against the defendant on the count of the second amended complaint seeking damages for breach of fiduciary duty. As part of the relief granted pursuant to that order, the trial court allowed the defendant until June 6, 2023, to reimburse the Trust the $290,200 that it found he had wrongfully taken from it. Its order provided that if he failed to do this, a judgment would be entered against him individually. On November 9, 2023, after finding that the defendant had failed to reimburse the Trust pursuant to its prior order, the trial court granted a motion by the plaintiffs for entry of judgment against the defendant in his individual capacity.

¶ 43 Based upon the granting of summary judgment on the count for breach of fiduciary duty, the trial court's entry of judgment against the defendant in his individual capacity was proper. "A trustee is personally liable for any loss occasioned by a violation of his duties as trustee." *Stuart v. Continental Illinois National Bank & Trust Co.*, 68 Ill. 2d 502, 526 (1977). " 'When a trustee breaches a trust agreement, whether willfully, negligently, or by oversight, he is liable for any loss to the estate resulting from the breach and must place the beneficiaries in the position they would have held had the breach not occurred.' " *Gearhart*, 2020 IL App (1st) 190042, ¶ 149 (quoting *Progressive Land Developers, Inc. v. Exchange National Bank of Chicago*, 266 Ill. App. 3d 934, 942 (1994)). The Trust Code provides that a violation by a trustee of a duty that the trustee owes to a beneficiary is a breach of trust (760 ILCS 3/1001(a) (West 2020)) and authorizes a court to "compel the trustee to redress a breach of trust by paying money, restoring property, or other

means." *Id.* § 1001(b)(3). It further provides that a trustee who commits a breach of trust is liable to the beneficiaries affected for at least "the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred." *Id.* § 1002(a)(1). Pursuant to this authority, the trial court's entry of judgment against the defendant in his individual capacity is affirmed.

¶ 44                                    D. Sanctions, Attorney Fees, and Costs

¶ 45          The fourth and fifth principal arguments raised by the defendant concern the awarding of attorney fees and costs and the granting of the plaintiffs' second motion for sanctions. These arguments by the defendant overlap somewhat with one another, and they also overlap with the plaintiffs' argument on cross-appeal that the trial court erred by awarding attorney fees and costs only for the conduct that the trial court found to be sanctionable. We address these issues together.

¶ 46                                          *1. Trial Court Rulings*

¶ 47          At the hearing in which the trial court granted the motion for summary judgment, it also awarded attorney fees and costs to be determined in a later fee petition, and it ruled on two motions by the plaintiffs for sanctions. In the context of the remedies for the granting of summary judgment, the trial court made the following statements:

> "And I will add that I am incredibly troubled by your conduct, Mr. Ruggiero, throughout. In this case, during the discovery process, you made every effort to frustrate and complicate a very, very simple discovery process. You knew better and you did it on your own, and you did it to undermine not only [the plaintiffs' attorney's] efforts, which he had an absolute ethical responsibility to zealously advocate, but also in defiance of multiple court orders.

> * * *

I am also awarding attorney's fees and costs that the plaintiffs have incurred 100 percent. 100 percent. This is an outrageous course of conduct that you engaged in. There is no excuse for it. And that is consistent with [section 1004 of the Trust Code (760 ILCS 3/1004 (West 2020))]."

The trial court then proceeded to rule on the two motions for sanctions, stating:

"There are two separate motions for sanctions. The first motion is entitled the plaintiffs' motion for sanctions as a consequence of defendant's repeated failure to comply with this Court's orders regarding discovery and the Supreme Court rules governing discovery.

Mr. Ruggiero has responded to this, and I am very concerned, as I have expressed to the parties, the defiance not only of the spirit and intent of all Supreme Court rules that deal with the discovery process, but my repeated orders; nonetheless, in light of the remedies that I have previously ordered, I'm denying that motion. There is a second motion, and it is entitled the plaintiffs' second motion for sanctions. There has been no response to this. I am granting this motion, but the sanctions that I would require would be for attorney's fees only for the discovery that was undertaken, all the discovery motions, all of the discovery that [the plaintiffs' attorney] and his clients were required to engage in subsequent to May 4th of 2022, but in light of the Court's remedy that Mr. Ruggiero is obligated to pay all attorney's fees, I am granting the motion, but I am denying a request for any additional sanctions other than what I have ordered."

The written order from that date states that the plaintiffs' second motion for sanctions is granted, but "[i]n light of the relief awarded on summary judgment, no additional relief is awarded."

¶ 48    The plaintiffs thereafter filed a fee petition, in which they requested attorney fees and costs totaling $51,524.31 covering all work performed on behalf of the plaintiffs in the litigation. The

defendant filed a written response, which in pertinent part argued, "It is clear from a review of the transcript that this Court meant that Plaintiffs are entitled to '100%' of the fees and costs that resulted from the alleged harm caused by [the defendant's] supposed sanctionable conduct." The defendant argued that most of the fees and costs sought by the plaintiffs were unrelated to the conduct for which the trial court had granted sanctions.

¶ 49    At oral argument on the fee petition, the trial court stated, "I agree with [the defendant], that my thought was—and maybe I mischaracterized my intent, was that fees and costs should be assessed for the sanctionable conduct that was identified in the motions and in my prior orders." The court added that the sanctions "were certainly appropriate in light of the incredibly egregious nature of your conduct, Mr. Ruggiero, but I agree with you, the intent—my intent was to impose fees and costs for the sanctionable conduct and the work that [the plaintiffs' attorney] and his firm was obligated to undertake, that was unnecessary in this case." The court found that the plaintiffs' fee petition was detailed, that none of the fees reflected double-billing or work that was done for any purpose other than to advance the case, and that the $180 hourly rate requested was "incredibly fair and incredibly reasonable." The trial court thus concluded that after "somewhat painfully going through the fee petition," $16,797.00 in attorney fees and $1,528.14 in costs were reasonable and necessary as a result of the sanctionable conduct occurring between April 15, 2021, and May 1, 2022. The trial court did not delineate exactly which fees and costs requested were included in or excluded from this calculation. The total fees and costs awarded was therefore $18,325.14.

¶ 50                          *2. Sanctionable Conduct in Discovery*

¶ 51    We first address the defendant's argument that no attorney fees or costs were appropriate for the reason that no sanctionable conduct occurred in this case. The defendant points out that he answered written discovery and later supplemented his answers. He also asserts that he adequately

explained to the court that his medical and family problems made it "difficult for him to keep abreast of the plaintiffs' discovery requests." He states that he failed to diary the date set for his deposition in November 2022, but nevertheless he contacted the plaintiffs' attorney the morning before it to inform him that medical problems would prevent the deposition from taking place the following day. Accordingly, the defendant argues, he always kept the trial court informed of his health problems, and these constituted a reasonable excuse for his delays in completing discovery. We disagree and hold that the trial court did not abuse its discretion by finding that the defendant's conduct in discovery warranted sanctions.

¶ 52       Illinois Supreme Court Rule 219(c) (eff. July 1, 2002) authorizes a trial court to impose sanctions for the unreasonable failure of a party to comply with the rules and court orders governing the discovery process. The sanctions authorized by this rule include an order that the offending party pay the reasonable attorney fees and expenses incurred by the other party. *Id.* A trial court's imposition of sanctions will not be disturbed on review unless the sanctions constitute an abuse of discretion, such as when the sanctioned party's conduct was not unreasonable or when the sanction itself is unjust. *Koppel v. Michael*, 374 Ill. App. 3d 998, 1004 (2007). Once a trial court imposes a sanction for noncompliance with discovery, the sanctioned party has the burden of establishing that the noncompliance was reasonable or justified by extenuating circumstances or events. *In re Marriage of Potenza and Wereko*, 2020 IL App (1st) 192454, ¶ 61.

¶ 53       As stated above, the trial court addressed two motions for sanctions, granting the first and denying the second. Despite its statement that it was denying the first motion, the trial court granted attorney fees and costs for the time period commencing April 15, 2021, which coincides with the timeframe for which sanctions were sought in the first motion. Because of this, and also because of the defendant's assertion on appeal that he complied with written discovery, our review of the

relevant facts begins with the first motion for sanctions.

¶ 54    The first motion for sanctions was filed on November 12, 2021, and it largely asserts that the defendant failed to comply with his written discovery obligations through that date. It reflects that on April 16, 2021, the plaintiffs had filed a motion to compel responses to written discovery served on February 23, 2021. This discovery consisted of four interrogatories, which sought information about (1) assets owned by the Trust as of the settlor's death, (2) assets transferred into the Trust after her death, (3) payments made by the Trust after her death, and (4) assets transferred out of the Trust since her death. Also, a production request sought twelve categories of documents to be produced. The trial court granted this motion to compel on May 6, 2021, and the defendant was ordered to complete the written discovery by May 25, 2021.

¶ 55    The defendant served responses to this written discovery on June 2, 2021, but these responses consisted almost entirely of objections; no interrogatories were answered, and no documents were produced. On June 15, 2021, the plaintiffs filed a motion to overrule the defendant's discovery objections. On June 24, 2021, the trial court entered and continued that motion, but it ordered the defendant to respond to the plaintiffs' written discovery "completely and in good faith by July 15, 2021." The defendant failed to file any further written discovery responses as of July 15, 2021. On August 26, 2021, the trial court overruled the defendant's objections and ordered him to file responses to the written discovery by September 23, 2021. The defendant again failed to meet this deadline. On October 7, 2021, the trial court ordered the defendant to respond to the discovery by October 27, 2021. The defendant failed to comply with this deadline also. On October 29, 2021, the plaintiffs' attorney sent an email to the defendant requesting that he provide dates for his discovery deposition. The defendant responded four days later, stating that he would not present himself for a deposition without a court order.

¶ 56     This is the point at which the first motion for sanctions was filed. Thereafter, on January 19, 2022, the trial court entered and continued the first motion for sanctions, and it ordered the defendant to provide "complete verified answers to Plaintiffs' interrogatories, complete responses to Plaintiffs' requests to produce, along with all responsive documents and an affidavit of completeness by 5:00 p.m. on February 9, 2022." On February 9, 2022, the defendant filed amended answers to the interrogatories and production request. However, the defendant's discovery responses apparently remained incomplete, as the trial court again entered an order on March 2, 2022, requiring him to provide complete interrogatory answers, production responses, all responsive documents, and an affidavit of completeness by March 25, 2022. On March 25, 2022, the defendant filed additional answers to the interrogatories and the production request.

¶ 57     The first motion for sanctions was entered and continued from time to time, and it remained pending when the plaintiffs filed their second motion for sanctions on June 1, 2022. The second motion largely pertained to the defendant's efforts to avoid presenting himself for a discovery deposition. The second motion for sanctions picked up in November 2021 where the prior motion had left off, concerning the defendant's refusal then to schedule his discovery deposition without a court order requiring him to do so. On February 18, 2022, the trial court entered an order that the defendant "present himself for deposition on or before May 6, 2022, on a mutually agreeable date." In an order dated April 12, 2022, this deadline was extended to May 31, 2022, and further provided that if the defendant did not present himself for deposition by that date, the allegations of the second amended complaint would be deemed admitted. On May 4, 2022, the plaintiffs' counsel sent an e-mail to the defendant requesting dates when he was available. The defendant sent an automated e-mail response that he had been out of the office indefinitely beginning April 22, 2022, due to a medical procedure. The plaintiffs' attorney again sent a follow-up email on May 11, 2022,

asking for dates to set the deposition; the record reflects no response by the defendant to this e-mail. The plaintiffs' attorney sent another follow-up email on May 23, 2022, but received only the same automated response as before.

¶ 58    On May 31, 2022, which was the deadline to present himself for deposition, the defendant filed a motion to extend the time to do so. He requested additional time due to his need to recover from an elective hip replacement surgery on April 22, 2022, and to complete physical therapy. It was also at this point that the plaintiffs' second motion for sanctions was filed. The defendant's motion to extend the deposition deadline was ultimately granted on June 8, 2022. He was given until July 28, 2022, to present himself for deposition, "which may be taken under supervision of the Court if requested by Plaintiffs." The defendant apparently contracted COVID in June 2022, and the deadline was again extended. The order of August 8, 2022, gave the parties until August 23, 2022, to agree on a date for the defendant's deposition, which the court ordered to be held in the courtroom. This deadline was again not met, and on September 7, 2022, the defendant filed a second motion to extend the time to present himself for discovery deposition. He requested additional time to recover from his hip surgery and the continued effects of his COVID diagnosis. On September 13, 2022, this motion was granted. The court ordered that the defendant's deposition would take place on November 2, 2022 in the court's jury room.

¶ 59    On October 14, 2022, the defendant filed a third motion to extend the time to present himself for deposition, again citing his ongoing need to recover from his hip surgery and effects of COVID. On October 24, 2022, the trial court granted this motion and continued the date of the defendant's deposition to November 22, 2022, in the court's jury room. On November 21, 2022, at 8:23 p.m., the defendant sent an e-mail to the plaintiffs' counsel stating that he would not be appearing for his deposition the following day, stating that he had developed an ear infection and that his ongoing

respiratory issues were possibly "long COVID." On December 15, 2022, he presented his fourth motion to extend the time to present himself for discovery deposition. On December 16, 2022, the trial court granted his motion, providing that it was the final extension. The court ordered his deposition to proceed on January 25, 2023, in the court's jury room.

¶ 60　　On January 24, 2023, the defendant filed an emergency motion to stay the proceedings, citing the matter pending against him before the Illinois Attorney Registration and Disciplinary Commission involving the same subject matter at issue in this case. On January 25, 2023, the trial court denied the defendant's motion to stay. It ordered the defendant's deposition to proceed at 2:30 p.m. that afternoon in the court's jury room. Its order further stated, "Defendant has been ordered to appear and was advised by the Court of the consequences that may result if he fails to appear at the ordered deposition." The record indicates that the defendant's deposition did take place that day and that he asserted his Fifth Amendment right against self-incrimination in response to all questions involving administration of the Trust.

¶ 61　　Based on our review of the above facts, we reject the defendant's argument that no sanctionable conduct occurred in this case. Rather, the history of this case demonstrates that the defendant went to great lengths to delay and avoid both responding to simple written discovery and sitting for a discovery deposition. The trial court's determination that the defendant's conduct amounted to an unreasonable failure to comply with the discovery rules and orders is fully supported, and its entry of sanctions against the defendant was not an abuse of discretion.

¶ 62　　　　　　　　　　　　　　*3. Attorney Fees and Costs*

¶ 63　　The trial court's allowance of attorney fees and costs is challenged both in the defendant's appeal and in the plaintiffs' cross-appeal. The plaintiffs' argument is that the trial court erred when it limited their recovery of fees and costs only to those incurred between April 15, 2021, and May

1, 2022, due to the defendant's conduct in discovery that the court found sanctionable. They argue that the trial court was initially correct when it stated that, as a remedy imposed upon the entry of summary judgment, the plaintiffs were entitled to an award of "100 percent" of their attorney fees and costs under section 1004 of the Trust Code (760 ILCS 3/1004 (West 2020)) based on the "outrageous course of conduct that [the defendant] engaged in." They argue that, despite this initial recognition of their full entitlement to fees under section 1004, the trial court later incorrectly limited their recovery by allowing fees and costs only for the discrete conduct found sanctionable under Illinois Supreme Court Rule 219(c) (eff. July 1, 2002).

¶ 64    In arguing that they are entitled to recover their fees and costs for the entirety of the litigation, the plaintiffs emphasize that the uncontested facts demonstrated that all of the attorney fees and costs they incurred in this litigation were due to the defendant's breaches of the fiduciary duties he owed to them. Instead of honoring Lena De Benedetto's intent that the plaintiffs and the other two charities receive the residuary of the Trust upon the death of her son, the defendant lied to the plaintiffs for years about his plans to distribute the funds to them while simultaneously converting nearly all of the Trust's assets to himself as unsubstantiated trustee fees. Only after breaching his fiduciary duty did he also engage in the substantial discovery delays that led to sanctions. The plaintiffs argue that we should look to both sections 1004 and 1002(a)(1) of the Trust Code (760 ILCS 3/1004, 1002(a)(1) (West 2020)) and conclude that an award of all of their attorney fees and costs for the entire litigation is necessary here to restore the full value of the distribution they would have received from the Trust had the breach not occurred.

¶ 65    For the defendant's part, he again relies on the purported handwritten amendments to the Trust in 2013 and 2015 to argue that this litigation was necessary to resolve competing claims about Lena De Benedetto's intent as to the operative Trust documents and the proper residuary

beneficiary. He contends that the disputed issues of fact raised by these handwritten amendments belie the plaintiffs' assertion that their filing of this case was made necessary only by his breach of fiduciary duty. He also contends that this warrants application of the traditional "American Rule," whereby each party must bear its own attorney fees incurred in litigating this dispute. For his own appeal as to this issue, the defendant urges this court to reverse the trial court's judgment "awarding the plaintiffs 100% of the fees and costs they incurred" or alternatively to "remand the cause with instructions to reconsider the issue and to award only such fees as the plaintiffs would have incurred had there been a full hearing to determine the settlor's intent as to her residuary beneficiary." As to the cross-appeal, he argues that the trial court did not abuse its discretion by declining to award the full amount of attorney fees and costs requested by the plaintiffs.

¶ 66        Effective January 1, 2020, the General Assembly enacted statutory authorization for the allowance of attorney fees and costs in judicial proceedings involving the administration of a trust, such as the present case. This authorization exists in section 1004 of the Trust Code, which provides, "In a judicial proceeding involving the administration of a trust, the court, as equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." *Id.* § 1004.

¶ 67        The permissive language of section 1004 makes clear that the allowance of attorney fees and costs is discretionary with the trial court. Accordingly, a reviewing court will not overturn a trial court's judgment awarding attorney fees absent a showing of abuse of discretion. *Multimedia Sales & Marketing, Inc. v. Marzullo*, 2020 IL App (1st) 191790, ¶ 29. An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 68        However, we agree with the plaintiffs that this case presents a rare instance in which the trial

court abused its discretion by limiting the plaintiffs' recoverable attorney fees only to those incurred because of the defendant's discovery misconduct instead of allowing recovery of the full fees incurred by the plaintiffs for the entirety of the litigation. We reach this conclusion for two reasons. The first is the level at which the defendant engaged in egregious, bad faith conduct as successor trustee that necessitated the plaintiffs filing this litigation to enforce their rights to the residuary funds in the Trust. The extent to which a trustee's misconduct can be characterized as culpable is an important factor in determining whether a beneficiary's attorney fees should be assessed against a trustee individually. See *Allard v. Pacific National Bank*, 663 P.2d 104, 112 (Wash. 1983) ("Where litigation is necessitated by the inexcusable conduct of the trustee, however, the trustee individually must pay those expenses"); *Wolff v. Calla*, 288 F. Supp. 891, 894 (E.D. Pa. 1968) (courts should not hesitate to assess a beneficiary's attorney fees against a trustee individually " 'when his conduct has been of a gross or inexcusable nature' "), quoting *Wilmington Trust Co. v. Coulter*, 208 A.2d 677, 682 (Del. Ch. 1965); George Gleason Bogert & George Taylor Bogert, *The Law of Trusts & Trustees* § 871 (2d ed. rev. 1995) (court assessing a beneficiary's attorney fees against a trustee may consider "the nature and extent of the defendant's wrongful conduct, and whether there was good faith on the part of the defendant").

¶ 69    In this case, the undisputed facts establish that the plaintiffs were caused to incur attorney fees and costs by the defendant's egregious misconduct as trustee that long preceded and went far beyond noncompliance with discovery orders. As the trial court stated when it ruled on summary judgment, "In short, [the defendant] has breached every single duty a trustee owes to the trust beneficiaries." This began when he assumed the role of successor trustee and never informed the plaintiffs that they had been named as residuary beneficiaries of the Trust. After they were informed by an anonymous source of their status as residuary beneficiaries, they spent months

trying to get information from him. Month after month, from June 2019 through April 2020, he told the plaintiffs' representatives that he was nearly in a position to disburse the Trust's residuary funds to them, but he never did so. Instead, he wrote 72 checks to himself for a total of $290,200, thereby depleting nearly all of the Trust's assets. He continued writing checks to himself through May 2021, well into the litigation of this case.

¶ 70 Significantly, it does not appear to us that the defendant ever attempted to present a substantive defense or justification for his conduct in the two-and-a-half years that this case pended prior to summary judgment. He never presented any substantiation for any of the "trustee fees" he claimed. Nevertheless, he managed to prolong the completion of basic discovery for over two years. When the plaintiffs ultimately filed their motion for summary judgment, he simply ignored it. He waited until the last possible moment on the day of the hearing to request an extension of time to respond. Only after summary judgment was granted did he attempt to present a defense that he was the true residuary beneficiary of the trust, something he had never mentioned previously in the years of litigation. Furthermore, the defendant did all of this at a time when he was an Illinois licensed attorney and therefore an officer of the court.

¶ 71 Our second reason for holding that the plaintiffs are entitled to their full fees for the entirety of the litigation is our conclusion that, in this case, it is appropriate that the plaintiffs be made whole from the defendant's wrongful conduct. We concur with those courts that have recognized that one objective of "an award of attorney's fees in a breach of trust action is to make the injured party whole." *Heller v. First National Bank of Denver, N.A.*, 657 P.2d 992, 999 (Colo. App. 1982); accord *Mangiante v. Niemiec*, 910 A.2d 235, 240-41 (Conn. App. 2006). This objective is consistent with Illinois law. Section 1002(a) of the Trust Code provides:

"A trustee who commits a breach of trust is liable to the beneficiaries affected for the

greater of:

(1) the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred; or

(2) the value of any benefit received by the trustee by reason of the breach." 760 ILCS 3/1002(a) (West 2020).

¶ 72     The language of section 1002(a) largely tracks the language of section 100 of the Restatement (Third) of Trusts. See Restatement (Third) of Trusts § 100 (2012). In turn, the comments to section 100 provide that the " 'make whole' objective" of this provision may include allowing the attorney fees and litigation costs of a successful plaintiff in appropriate cases. Restatement (Third) of Trusts § 100 cmt. b(2) (2012). The comments further provide, however, that attorney fees are a matter of judicial discretion and not a routine part of liability for breach of trust. *Id.* "Among the facts and circumstances courts consider in exercising their judgment in these matters are the nature and extent of trustee misconduct in committing the breach, the conduct of the trustee in presenting the accounting or defending the surcharge action, and the significance of imposing costs on the trustee as a deterrent to misconduct." *Id.*

¶ 73     In our view, there exists no reason in this case for disallowing a full recovery by the plaintiffs of all attorney fees and costs they incurred as a result of the defendant's egregious breaches of duty as successor trustee. The objective of making the plaintiffs whole applies in this context, and that objective would be frustrated by requiring them to expend attorney fees amounting to a substantial percentage of the residuary funds they were entitled to receive from the Trust.

¶ 74     Accordingly, we reverse the trial court's award of attorney fees and costs and remand this case to the trial court for entry of an award of attorney fees and costs in the amount of $51,524.31. The plaintiffs have also filed a motion in this court to recover their reasonable costs and attorney

fees incurred in this appeal, which we hereby grant. The trial court shall determine the reasonable amount of these costs and fees on remand and add them to the sum above.

¶ 75                                      E. Punitive Damages

¶ 76       The final argument that we address is the plaintiffs' argument on cross-appeal that the trial court abused its discretion by denying the request in their motion for summary judgment for an award of punitive damages. While both parties devote much argument to the merits of whether the defendant's conduct warranted the imposition of punitive damages, we find that the more fundamental point raised by the defendant is that the denial of punitive damages here did not occur in the context of a trial or other evidentiary hearing. Rather, the trial court was requested to make an award of punitive damages in the context of granting a motion for summary judgment by the plaintiffs, and it declined to do so. We find no error in the trial court's action.

¶ 77       In this case, summary judgment was properly granted as to compensatory damages because there existed no genuine issue of material fact that the defendant had improperly taken $290,200 from the Trust and that the two plaintiffs were respectively entitled to one-fourth of that sum under the terms of the Trust. However, the absence of a genuine issue of material fact as to the amount of compensatory damages does not mean that the trial court could also assess and award punitive damages in granting a motion for summary judgment.

¶ 78       The plaintiffs argue that trial court's finding that the defendant engaged in outrageous conduct and breached his fiduciary duties is sufficient to impose punitive damages, and "[n]o further hearing was required to establish the propriety of punitive damages." However, the plaintiffs cite no authority for this proposition. At best, they cite the proposition that punitive damages are available as a matter of law for a breach of fiduciary duty. See *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1148 (2004). However, the recognition that punitive

damages are available as a matter of law for this cause of action does not mean that they can be assessed and awarded in a context other than a trial. In *Franz*, the appellate court was reviewing a trial court's determination not to award punitive damages following a bench trial. *Id.* at 1148-49. The other cases cited on appeal by the plaintiffs likewise involved a trial court ruling on punitive damages following a bench trial. See *Gearhart*, 2020 IL App (1st) 190042, ¶ 1; *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160 (1993). As there was no trial in this case, the trial court's determination not to award punitive damages was appropriate.

¶ 79                                   III. CONCLUSION

¶ 80        For the foregoing reasons, we reverse the trial court's award of $16,797.00 in attorney fees and $1,528.14 in costs. We remand with directions that the trial court enter in its stead an award of $46,062.00 in attorney fees and $5,462.31 in costs, plus any such further reasonable attorney fees and costs incurred by the plaintiffs on appeal to be determined by the trial court. All other aspects of the trial court's judgment are affirmed.

¶ 81        Affirmed in part and reversed in part.

¶ 82        Cause remanded with directions.